UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRIFFIN HEALTH SERVICES CORPORATION, GRIFFIN HOSPITAL<br>　　Plaintiffs, | : : : : | CIVIL CASE NO.<br>3:24-CV-01045 (JCH) |
| v. | : : : | |
| NOVO NORDISK INC.,[1]<br>　　Defendant. | : : | FEBRUARY 10, 2025 |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 18)**

**I.     INTRODUCTION**

The plaintiffs, Griffin Health Services Corporation and Griffin Hospital (collectively "Griffin Health") filed this suit against the defendant, Novo Nordisk Inc. ("Novo Nordisk"), alleging insulin pens provided by Novo Nordisk and used by Griffin Health to treat patients were defective and lacked requisite product warnings. See Am. Compl. (Doc. No. 36).  The defendant filed a Motion to Dismiss (Doc. No. 18) ("Mot. Dismiss"), Defendant's Memorandum in Support of Motion to Dismiss (Doc. No. 18-1) ("Def.'s Mem."), and Defendants' Reply in Support of Motion to Dismiss (Doc. No. 38) ("Def.'s Reply").  The plaintiffs oppose the Motion to Dismiss.  Memorandum of Law in Opposition to Motion to Dismiss ("Pl.s' Opp'n") (Doc. No. 34).  For the reasons discussed below, the Motion is granted in part and denied in part.

---

[1] The court issued an Order (Dkt. No. 17) granting the parties' Joint Stipulation of Dismissal, thereby dismissing claims raised in the Complaint asserted against certain Novo Nordisk entities.

1

## II.     ALLEGED FACTS[2]

Griffin Health is a Connecticut corporation with its principal place of business in Derby, Connecticut.  Am. Compl. at ¶ 1; Notice of Removal (Doc. No. 1) at ¶ 25.  Novo Nordisk is incorporated in Delaware with its principal place of business in New Jersey.  Notice of Removal at ¶ 27.  Novo Nordisk is a pharmaceutical company that produces insulin pens designed to deliver multiple doses of insulin.  Am Compl. at ¶¶ 2, 4.  The pens feature a reusable insulin cartridge and a disposable needle.  Id. at ¶ 5.  Griffin Health used these insulin pens from 2008 to May 2014 to administer insulin injections to more than 3,100 patients.  Id. at ¶¶ 3, 15.[3]  Griffin Health's staff members shared the insulin pens among patients.  Id. at ¶ 16.  Because small amounts of a patient's blood could be absorbed through the needle of the pen into the insulin cartridge, Griffin Health's practice of sharing insulin pens among patients exposed patients to the risk that blood-borne illnesses, such as human immunodeficiency virus, could be transmitted upon injection into another patient.  Id. at ¶¶ 9, 14, 17–18.  As a result, Griffin Health was subject to a class-action lawsuit brought by its patients, which Griffin Health settled for approximately $1 million.  Id. at 23–25.  Griffin Health incurred additional costs testing patients who may have been exposed to blood-borne illnesses and responding to an investigation undertaken by the Connecticut Department of Public Health.  See id. at ¶¶ 19–20.

---

[2] The court provides a summary of allegations relevant to this Ruling.  As it must, the court assumes the well-pleaded factual allegations in the plaintiffs' Amended Complaint are true for the purposes of deciding the Motion to Dismiss.

[3] It is not clear when, exactly, Griffin Health began using the insulin pens.  Compare Am. Compl. at ¶ 3 (use began on January 1, 2008); with Am. Compl ¶ 7 (use began in September 2008).

Beginning in 2008, medical publications and news outlets reported that healthcare providers were using insulin pens, such as those at issue here, on multiple patients, thereby exposing patients to the risk that they might become infected with blood-borne illnesses. Id. at ¶¶ 8–9. The FDA even issued a warning about the dangers of this practice. Id. at ¶ 10. In 2013, a class action was filed in which the plaintiffs alleged Novo Nordisk failed to adequately warn them about the dangers of sharing its insulin pens. Id. at ¶¶ 11–12. Though Novo Nordisk was, or should have been, aware that its pens were being shared, it did not adequately warn Griffin Health about the dangers of this practice. Id. at ¶¶ 14, 22.

In addition to the factual allegations contained in the Amended Complaint and summarized above, Novo Nordisk requests the court take judicial notice of exhibits it submitted to supplement its Motion to Dismiss. Def.'s Request for Judicial Notice (Doc. No. 19); Def.'s Supplemental Request for Judicial Notice (Doc. No. 39). The court, exercising its discretion, declines the request at this stage of the litigation.[4]

## III.   STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss

---

[4] Though the court does not consider the defendant's exhibits in deciding the instant Motion, the court's preliminary review of the exhibits, including a Connecticut Department of Public Health report, appear to call into question the plaintiffs' claim that the defendant failed to adequately warn or instruct the plaintiffs about the proper use of the pens.

3

under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.   DISCUSSION

Griffin Health alleges Novo Nordisk violated provisions of the CPLA, and fraudulently misrepresented the safety of its insulin pens; it also seeks indemnification for costs incurred as a result of Novo Nordisk's allegedly tortious actions.  See Am. Compl.  Novo Nordisk moves to dismiss all of Griffin Health's claims, see Def.'s Mot., and Griffin Health opposes the Motion.  See Pl.s' Opp'n.

Before considering the merits of the parties' arguments, the court notes that, after Novo Nordisk filed its Motion to Dismiss (Doc. No. 18), Griffin Health filed an Amended Complaint (Doc. No. 36).  Novo Nordisk maintains the Amended Complaint "contains the same factual deficiencies as the original Complaint."  Def.'s Reply at 2.  Accordingly, the court treats Novo Nordisk's Motion to Dismiss as a Motion to Dismiss the Amended Complaint.

### A.   Count Four: Sale, Manufacture, or Distribution of Defective Product

Novo Nordisk argues that Griffin Health's CPLA claim is barred by section 52-572n of the General Statutes of Connecticut.  Def.'s Mem. at 9–10.  Section 52-572n(c) provides "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim."  Conn. Gen. Stat. 52-572n(c).  There is no dispute that the parties involved in this case

are commercial parties; thus, the pertinent issue is whether Griffin Health's losses are "commercial" within the meaning of the term as used in section 52-572n(c).

The Connecticut Supreme Court considered the meaning of "commercial loss" in Sylvan R. Shemitz Designs, Inc. v. Newark Corp., 291 Conn. 224 (2009). The case involved the maker of light fixtures, the plaintiff, which used a component in its fixtures supplied by the defendant. Id. at 227. The plaintiff alleged the defendant's product cause the plaintiff's light fixtures to break and the plaintiff suffered damages as a result of costs it incurred fixing the broken light fixtures that it had sold to customers. Id. at 227-29. The Connecticut Supreme Court considered whether the damages sought by the plaintiff amounted to a "commercial loss." Id. at 227–29. The Court concluded "the term 'commercial loss' does not encompass costs incurred by a commercial party in repairing or replacing a defective product, or in repairing property damage caused by a defective product." Id. at 238. According to the court, it was of no moment that the damaged property was owned by the plaintiff's customers rather than the plaintiff because the CPLA "imposes no express requirement that a claimant own the property that has been damaged in order to bring an action seeking compensation for damage to that property." Id. at 232.

Shemitz is analogous to the instant case. There, the Connecticut Supreme Court allowed the plaintiff to pursue damages under the CPLA for costs it incurred remedying damage done to third party property, the damage having been allegedly caused by the defendant's product. Id. at 227–29. Similarly, here, Griffin Health seeks damages it incurred remedying personal injuries to third parties, these injuries were allegedly caused by Novo Nordisk's product. While Shemitz involved third-party property damage

5

and this case involves third-party personal injuries, the CPLA applies with equal force to personal injuries and property damage.  Conn. Gen. Stat. § 52-572m(b) ("Product liability claim includes <u>all claims or actions brought for personal injury</u>, death <u>or property damage</u> caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." (internal quotation marks omitted and emphasis added)).  Thus, applying <u>Shemitz</u> to the instant case, the court concludes Griffin Health may seek damages stemming from the costs it incurred reimbursing patients for injuries allegedly caused by Novo Nordisk's products.

  B. <u>Negligence Claims</u>

In addition to asserting Count Four under the CPLA, Griffin Health also asserts separate counts sounding in negligence.  <u>See</u> Am. Compl., Counts One, Four, Six, and Eight.  Under Connecticut law, product liability claims "include . . . all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent."  Conn. Gen. Stat. § 52-572m(b).  When a pleading asserts a CPLA cause of action and styles other theories of common law liability as separate causes of action, as Griffin Health does here, courts generally treat separately asserted claims as theories of liability arising under a single CPLA claim.  <u>See</u> <u>Collazo v. Nutribullet</u>, 473 F. Supp. 3d 49, 52 (D. Conn. 2020) ("[T]he CPLA permits a plaintiff to assert various common law theories of liability thereunder.").  The court, therefore, reads Griffin Health's Amended Complaint to assert three theories of liability under the CPLA sounding in negligence: (1) negligence; (2) gross negligence; and (3) negligent misrepresentation.  "Because the

CPLA does not 'alter the substance of a plaintiff's rights[,] any sub-claim brought under the CPLA must sufficiently allege all elements that would be required at common law.'" Hunte v. Abbott Lab'ys, Inc., 556 F. Supp. 3d 70, 82 (D. Conn. 2021) (cleaned up) (quoting Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc., No. 3:18-CV-00217 (CSH), 2019 WL 1258918, at *2 (D. Conn. Mar. 18, 2019).

        1.      Count One: Negligence

Novo Nordisk argues Griffin Health's claim based on negligence fails to allege physical injury and should be dismissed as a result. Def.'s Mem. at 10–11. In opposition, Griffin Health contends that it did allege physical injury: risk of blood-borne illnesses caused by the allegedly faulty pens. Pl.s' Opp'n at 8.

"A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury." Ruiz v. Victory Properties, LLC, 315 Conn. 320, 328 (2015). A complaint must contain allegations of an actual injury because "conduct that is merely negligent, without proof of an actual injury, is not considered to be a significant interference with the public interest such that there is any right to complain of it, or to be free from it." Right v. Breen, 277 Conn. 364, 377 (2006). Thus, the court must consider whether Griffin Health alleges some individual or entity sustained an actual injury.

In Poce v. O & G Industries, Inc., 210 Conn. App. 82 (2022), the court considered whether exposure to the risk of injury was sufficient to allege actual injury. There, the plaintiffs brought a negligence claim, alleging they had been exposed to asbestos fibers while working on a construction project. See Poce, 210 Conn. App. at 83–84. The trial court struck the claim; on appeal, the Connecticut Court of Appeals adopted the trial

7

court's reasoning and concluded some physical injury, not mere exposure to the risk of physical injury, was necessary to adequately plead a negligence claim.  Id. at 84, 96.

Also instructive on this issue is the case of Dougan v. Sikorsky Aircraft Corp., 337 Conn. 27 (2020).  There, the court considered whether a negligence claim, among others, was cognizable when the plaintiffs claimed they sustained sub-clinical injuries, "cellular injury that substantially increased the plaintiffs' risk of cancer", after being exposed to asbestos.  Dougan, 337 Conn. at 42–43.  The court assumed, without deciding, that sub-clinical injuries could amount to actual injuries, but affirmed the trial court's grant of summary judgment because there was no evidence that the plaintiffs suffered sub-cellular changes increasing their risk of cancer.  See id. at 47–48.  Considered together, Poce and Dougan suggest that an actual physical injury is generally required to adequately plead a negligence claim, and, when risk of injury is alleged, it should include an allegation that sub-clinical injury has occurred.  See Poce, 210 Conn. App. at 82–84, 95–96; Dougan, 337 Conn. at 42–48.

In Griffin Health's view, Poce is distinguishable from the instant case because, where the plaintiffs in Poce failed to allege an "actual injury from asbestos", Griffin Health alleges injuries caused by exposing patients to blood-borne illnesses.  Pl.s' Opp'n at 9.  Presumably, the injuries to which Griffin Health refers are the costs it incurred by compensating patients.  See id. at 8–9.  Far from being distinguishable, however, Poce and the instant case are comparable because there, as here, the Amended Complaint fails to allege any person sustained a physical, not merely a financial, injury because of the defendant's negligence.  Compare Poce, 210 Conn. App. at 95–96 ("[T]he complaint is devoid of . . . any [ ] physical component following the

8

exposure."); with Am. Compl. ("[P]ens were subject to potential backflow of blood or other contaminants into the cartridge that would potentially place patients at risk of harm from blood-borne pathogens should a single pen be used with multiple patients." (emphasis added)).  Accordingly, considering Count One as a "sub-claim" of the CPLA claim asserted under Count Four, the court dismisses that as a "sub-claim" under Count Four as well as dismisses Count One.

### 2. Count Eight: Gross Negligence

Novo Nordisk asserts Griffin Health, having failed to adequately plead its negligence claim, also fails to plead its claim of gross negligence.  Def.'s Mem. at 11.  Griffin Health argues that its gross negligence claim is adequately pled.  Pl.s' Opp'n at 9.  In Connecticut, "gross negligence has never been recognized in this state as a separate basis of liability in the law of torts.  We have never recognized degrees of negligence as slight, ordinary, and gross in the law of torts."  Decker v. Roberts, 125 Conn. 150, 157 (1939); accord Matthiessen v. Vanech, 266 Conn. 822, 833 n. 10 (2003); Hanks v. Powder Ridge Rest. Corp., 276 Conn. 314, 337 (2005).

Because gross negligence is not a separately cognizable theory of liability, this CPLA "sub-claim" based on gross negligence is dismissed for the reasons already discussed.  See, supra, part IV.A.2.a.  Count Eight is dismissed with prejudice.

### 3. Count Six: Negligent Misrepresentation

"[A]n action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, [ ] (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."  Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship, 309 Conn. 342, 351–52 (2013).  Novo Nordisk argues

9

Griffin Health's negligent misrepresentation claim fails to satisfy the first and third elements just described because the claim is devoid of allegations about the specific misrepresentations Novo Nordisk allegedly made, and whether Griffin Health reasonably relied on those misrepresentations. See Def.'s Mem. at 13. Griffin Health replies that the Amended Complaint includes detailed allegations about Novo Nordisk's knowledge that the pens were unsafe and its failure to share this knowledge with Griffin Health. Pl.s' Opp'n at 9–10.

Griffin Health draws the court's attention to paragraphs 8–12 of its Amended Complaint. Id. at 9.[5] There, Griffin Health alleges Novo Nordisk knew—or should have known—that its insulin pens were being used on multiple patients and that Novo Nordisk failed to warn Griffin Health about the dangers of this practice. See Am. Compl. at ¶¶ 8–12. Problematic for Griffin Health is that fact that this portion of the Amended Complaint does not include allegations as to the representations that Novo Nordisk made to Griffin Health about the safety of using insulin pens on multiple patients. See id. Similarly, the court's review of the entire Amended Complaint reveals no such allegations. See Am. Compl.

Because Griffin Health has failed to allege Novo Nordisk made affirmative statements that its pens could be used on multiple patients, the court grants Novo Nordisk's Motion to the extent it seeks to dismiss Griffin Health's CPLA "sub-claim" based on negligent misrepresentation.

---

[5] The court assumes Griffin Health intended to refer to the Amended Complaint, rather than the original Complaint, because paragraphs 8 and 10 to 12 of the original Complaint do not appear to support Griffin Health's argument, whereas paragraphs 8–12 of the Amended Complaint may support its argument. Compare Complaint (Doc. No. 1-2) at ¶¶ 8–12; with Am. Compl. at ¶¶ 8–12.

### C. Punitive Damages

Novo Nordisk moves to dismiss Griffin Health's prayer for relief in the form of punitive damages. Def.'s Mem. at 17–18; Def.'s Reply at 7. In so doing, Novo Nordisk argues Griffin Health has failed to allege facts suggesting Novo Nordisk acted with reckless or wanton action that would warrant an award of punitive damages. Def.'s Mem. at 17. In response, Griffin Health argues its Amended Complaint contains factual allegations suggesting Novo Nordisk acted recklessly because it allegedly knew the insulin pens were being used on multiple patients but refused to place warning labels on each pen discouraging such use. See Pl.s' Opp'n at 12.

Pursuant to section 52-240b of the General Statutes of Connecticut, an award of punitive damages is available when "the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." The court, having concluded that the Amended Complaint fails to adequately allege a claim based on negligence, see, supra, part IV.B.1, concludes the Amended Complaint fails to allege facts suggesting Novo Nordisk not only acted negligently, but recklessly. See Dubay v. Irish, 207 Conn. 518, 533 (1988) (describing recklessness as "aggravated negligence".). Accordingly, the court grants Novo Nordisk's Motion to dismiss Griffin Health's prayer for punitive damages.

### D. Count Seven: Fraudulent Misrepresentation

Allegations of fraudulent misrepresentation are subject to the same requirements as negligent misrepresentation. See, supra, part IV.A.2.c; see also Hunte v. Abbott Labs, Inc., 556 F. Supp. 3d 70, 90 (D. Conn. 2021). In addition, however, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

11

fraud or mistake." Fed. R. Civ. P. 9(b). Accordingly, "a complaint alleging fraud [must] . . . '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 81 (2d Cir. 2017) (quoting U.S. ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016)).

Just as Griffin Health has failed to adequately plead a claim based on negligent misrepresentation, see, supra, part IV.A.2.c, it has also failed to adequately plead a claim based on fraudulent misrepresentation. The court cannot locate any allegations in the Amended Complaint that Novo Nordisk expressly claimed a single insulin pen could be safely used on multiple patients. See Am. Compl. Accordingly, the court grants Novo Nordisk's Motion to the extent it seeks the court's dismissal of the claim based on fraudulent misrepresentation.

### E.    Count Five: Indemnification

Novo Nordisk argues Griffin Health has failed to adequately plead negligence because it has not established that its patients suffered an actual injury, and its indemnification claim should, therefore, be dismissed. Def.'s Mem. at 16. In opposition, Griffin Health asserts it does not need to plead each element of a negligence claim to adequately plead its indemnification claim. Pl.s' Opp'n at 11.

To assert a claim for common-law indemnification, the plaintiff must allege:

(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

12

Smith v. City of New Haven, 258 Conn. 56, 66 (2001).  To adequately plead the first element of an indemnification claim, the plaintiff must allege facts plausibly raising the inference that the defendant was negligent.  See SV Special Situations Master Fund Ltd. v. Knight Libertas, LLC, No. 3:08CV1769 SRU, 2011 WL 2680832, at *11 (D. Conn. July 8, 2011) ("To establish the first element of their common law indemnification claim, the [ ]plaintiffs must satisfy all the elements of a claim for negligence[.]" (emphasis added)); Centerplan Construction Co. LLC, et al. v. City of Hartford, et al., No. X07-HHD-CV-16-6069748-S, 2024 WL 5252162, at *4 (Conn. Super. Ct. Dec. 23, 2024) (striking an indemnification claim for failing to satisfy the first element because the complaint was devoid of facts raising the inference of negligence).

Having determined Griffin Health failed to plead its claim based on negligence, see, supra, part IV.A.2.a, the court grants the Motion to Dismiss to the extent it seeks dismissal of Griffin Health's "sub-claim" for indemnification and dismisses Count Five.

F.   Uniform Commercial Code

Griffin Health brings three claims under the Uniform Commercial Code ("UCC"): (1) breach of implied warranty of merchantability; (2) breach of implied warranty of fitness for a particular purpose; and (3) incidental and consequential damages arising from the two prior claims.  See Am. Compl., Counts Two, Three, Nine.  Novo Nordisk argues that Griffin Health's claims under the UCC violate the CPLA,[6] and that Griffin Health's warranty claims are inadequately pled and should be dismissed.  Def.'s Mem. at 14–16.  If the court dismisses Griffin Health's breach of warranty claims, Novo Nordisk argues Griffin Health's claim for incidental and consequential damages resulting

---

[6] Novo Nordisk raises this argument only in passing in a footnote.  Def.'s Mem. at 9 n. 16. Nonetheless, the court will address it.

13

from these breaches should similarly be dismissed. Def.'s Reply at 3. In response, Griffin Health argues its warranty claims are adequately pled. Pl.s' Opp'n at 10.

  1.  UCC Claims Barred by the CPLA

The court notes the CPLA generally provides the exclusive remedy for product liability claims, except for claims seeking recompence for commercial loss. Conn. Gen. St. Section 52-572n(c); Collazo v. Nutribullet, 473 F. Supp. 3d 49, 53 (D. Conn. 2020) ("The last subsection of [Connecticut General Statute section] 52-572n supports the conclusion that the CPLA bars Connecticut UCC claims that fall within the CPLA's scope." (cleaned up)). Accordingly, at least some courts have dismissed UCC claims when the plaintiff also brought CPLA claims. E.g., Collazo, 473 F. Supp. at 53 ("[I]f the breach of implied warranty of merchantability counts fall within the CPLA, the claims are precluded[.]" (internal quotation marks and citation omitted)).

The court reaches the same conclusion in this case. The Connecticut Supreme Court in Schemitz was clear: "[w]e also conclude that the exclusivity provision of the [CPLA] bars the plaintiff's claim of breach of the implied warranty of merchantability under the UCC." Shemitz, 291 Conn. at 230. This court therefore concludes that UCC claims are subsumed by the CPLA because the CPLA is the exclusive remedy for "all claims or actions . . . caused by . . . any product", Conn. Gen. Stat. § 52-572m(b). Thus, while its UCC claims cannot be brought separately, Griffin Health should be allowed to bring any well-pleaded UCC causes of actions in this case as a basis for a product liability "sub-claim". Accordingly, the court will address Griffin Health's UCC claims that are the subject of Novo Nordisk's Motion to Dismiss.

2. Count Two: Breach of Implied Warranty of Merchantability

To state a claim for breach of implied warranty of merchantability, a party must allege "(1) a merchant sold the goods; (2) the goods were defective and not merchantable at the time of sale; (3) injury occurred to the buyer or his property; (4) the injury was caused by the merchant's defective product; and (5) notice was given to the seller of the claimed breach." Leonard v. Gen. Motors L.L.C., 504 F. Supp. 3d 73, 99 (D. Conn. 2020) (internal quotation marks omitted).

In Novo Nordisk's view, the Amended Complaint contains only "threadbare assertions" about the allegedly defective nature of the product. Def.'s Mem. at 14. Further, Novo Nordisk argues the product was not defective when used as instructed. Id. Contrary to Novo Nordisk's view, the Amended Complaint does contain factual allegations that the insulin pens were prone to "backflow", the process through which blood cells contaminated the insulin cartridge. Am. Compl. at ¶¶ 6, 9, 14. Further, Novo Nordisk urges the court to adopt a view of "the product" that includes a box containing several pens and instruction packet. See Def.'s Mem. at 4-5, 8; Def.'s Reply at 3–4. Importantly, however, Griffin Health's view of "the product" is a single pen, which, allegedly, was defective because it did not contain a warning label. See Pl.'s Opp'n at 5. Whether the pens were defective if used as instructed, which Novo Nordisk argues they were not, is an issue of fact that the court declines to examine at this stage of the litigation.

The court denies Novo Nordisk's Motion to the extent it seeks to dismiss this CPLA "sub-claim" for breach of implied warranty of merchantability.

3. Count Three: Breach of Implied Warranty of Fitness for a Particular Purpose

An implied warranty of fitness for a particular purpose is established when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Conn. Gen. Stat. § 42a-2-315. To state such a claim, a party must allege: "(1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller." Leonard, 504 F. Supp. at 99 (internal quotation marks omitted).

The Amended Complaint does not allege that Novo Nordisk was aware Griffin Health intended to use the insulin pens for a "particular purpose", i.e., administer one insulin pen to multiple patients. The UCC defines a "particular purpose" as one that "differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business[.]" Conn. Gen. Stat. § 42a-2-315. If anything, the court's reading of the Amended Complaint is that Griffin Health allegedly used the pens for their ordinary purpose, but suffered harm, nonetheless. See Am. Compl. at ¶¶ 8, 10, 22 (describing the "numerous incidents" in which pens were used on multiple patients). The court dismisses Griffin Health's "sub-claim" for breach of implied warranty of fitness for a particular purpose because it is inadequately pled.

4. Count Nine: Incidental and Consequential Damages

Novo Nordisk argues that, if the court dismisses Griffin Health's breach of implied warranty claims, its claim for incidental and consequential damages should also be dismissed. Def.'s Reply at 3. Having ruled Griffin Health's breach of the implied

16

warranty of merchantability claim is adequately pled, see, supra part IV.D.1, the court denies Novo Nordisk's Motion to Dismiss Griffin Health's claim for incidental and consequential damages under the CPLA "sub-claim" of breach of implied warranty of merchantability.  However, it is not a separate cause of action, it should be repled as a remedy, if the plaintiffs replead breach of implied warranty of merchantability or breach of implied warranty of fitness for a particular purpose as "sub-claims" under Count Four.

## V.     CONCLUSION

For the reasons stated above, the court grants in part, and denies in part, the Motion to Dismiss (Doc. No. 18).  The Motion is granted to the extent it seeks to dismiss Counts One, Three, Five, Six, Seven, and Eight of the Amended Complaint and the plaintiffs' prayer for punitive damages.  The court dismisses Count Eight with prejudice. The court dismisses Counts One, Three, Five, Six, and Seven and the plaintiffs' prayer for punitive damages without prejudice to replead.  If the plaintiffs wish to attempt to replead these counts, they may do so only as "sub-claims" under Count Four, for which the CPLA provides the cause of action.  If the plaintiffs wish to replead their prayer for punitive damages, they may do so as a remedy to Count Four.  The Motion is otherwise denied.  Accordingly, Counts Two, and Four of the Amended Complaint remain, as discussed above.

Regardless of whether the plaintiffs intend to replead their dismissed claims, for the reasons already explained, the plaintiffs must file an amended Complaint in which they restyle Count Two as a theory of liability under the CPLA and Count Nine as a remedy to Count Four.  The court orders the plaintiffs, within fourteen (14) days from the date of this Ruling, to file an amended Complaint consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of February 2025.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge