**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GRIFFIN HEALTH SERVICES CORP.,
ET AL                                                        :          CIVIL CASE NO.
    Plaintiff,                                          :          3:24-CV-1045 (JCH)
                                                        :
                                                        :
v.                                                          :
                                                        :
NOVO NORDISK INC                                            :          JULY 24, 2026
    Defendant.                                          :

**RULING ON DEFENDANT NOVO NORDISK INC.'S MOTION TO PRECLUDE**
**EXPERT TESTIMONY OF DR. GERALD GOLDHABER (DOC. NO. 144)**

**I.      INTRODUCTION**

Defendant Novo Nordisk Inc. ("Novo Nordisk") brings this Motion to Preclude the

testimony of Dr. Goldhaber, an expert for Griffin Health Services Corporation, d/b/a

Griffin Hospital, and Griffin Hospital (together "Griffin").  See Defendant Novo Nordisk

Inc.'s Motion to Preclude Expert Testimony of Dr. Gerald Goldhaber (Doc. No. 144)

("Mot. to Preclude") and Defendant Novo Nordisk's Memorandum in Support of Motion

to Preclude Expert Testimony of Gerald Goldhaber (Doc. No. 144-1) ("Mem. Preclude").

Griffin opposed the Motion.  See Plaintiffs' Memorandum in Opposition to Defendant's

Motion to Preclude Expert Testimony of Dr. Gerald Goldhaber (Doc. No. 147) ("Pltf's

Opp'n").  Novo Nordisk submitted a reply memorandum in support of its Motion.  See

Defendant Novo Nordisk Inc.'s Reply Memorandum in support of its Motion to Preclude

Expert Testimony of Gerald Goldhaber (Doc. No. 154) ("Def's Reply").

For the reasons outlined below, the court denies Novo Nordisk's Motion to

Preclude.

1

## II.     BACKGROUND

The court and parties are familiar with the background of this case, but the court will briefly summarize some relevant background.

This case is a product liability case involving alleged negligence and failure to warn.  Griffin alleges that Novo Nordisk failed to warn about the risk of latent backflow contamination hazard of Novo Nordisk's insulin pens.[1]  See Pltf's Opp'n at 2.  Griffin alleges that Novo Nordisk also failed to place adequate warning labels on the pens themselves and the boxes containing the pens.  Id.  Griffin alleges that Novo Nordisk failed to warn, in training sessions conducted by Novo Nordisk on the insulin pens, of the risks of backflow as well as the single patient use limitation.  Id.

There has been significant motion practice in this case, including multiple Motions for Summary Judgment filed, Motions to Renew Summary Judgment (before this court had ruled upon the predicate Motion for Summary Judgment), and a previous Motion to Strike the Testimony of Dr. Goldhaber.  Id. at 3-4.

## III.     LEGAL STANDARD

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] These pens were a new device which contained multiple injections of insulin in an individual insulin pen device.  See generally 56(a) Griffin's Local Rule Statement of Facts (Doc. No. 126).

Fed. R. Evid. 702.  The District Court acts as a gatekeeper, charged with the task of deciding whether an expert's testimony satisfies Rule 702's general requirements. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-97 (1993).  In defining the gatekeeping role of the District Court, the Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact.  See Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005).

If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable.  In Daubert, the Supreme Court identified several factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593–94 (internal quotations and citations omitted)). These factors, however, do not constitute a "definitive checklist or test."  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).  Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case" with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Id. Further, it bears noting that the Second Circuit has endorsed a broad standard of admissibility for expert testimony.  See generally Do No Harm v. Pfizer Inc., 126 F.4th 109 (2d Cir. 2025).

3

## IV.    DISCUSSION

### A.    Introduction

Novo Nordisk moves to preclude the expert testimony of Dr. Goldhaber and requests a live Rule 702 hearing where Dr. Goldhaber would have to testify regarding the bases and methodology of his opinions.  See Mem. Preclude at 1.  Novo Nordisk asserts six reasons why Dr. Goldhaber's testimony should be precluded: "(1) [he] has no opinion on damages, (2) has no opinion on any design defect, (3) is not qualified to opine on nurse training or hospital management, (4) has no opinion on whether Novo Nordisk failed to warn the relevant learned intermediaries (here, the Griffin Hospital physicians), (5) he did not assess alternative causes of the five nurses' insulin pen sharing incident, and (6) he deems Novo Nordisk's warning compliance rate to be consistent with (and even better than) other, adequate warnings."  Id.

Novo Nordisk seeks to preclude the testimony on the six grounds outlined above; however, three of those grounds are easily addressed.  Dr. Goldhaber does not offer opinions on design defect, warnings to physicians under the learned intermediary doctrine, and damages.  See Pltf's Opp'n at 2.  The court is puzzled: how can it preclude an expert on subjects the expert does not opine?  Finally, if having no expert on a topic somehow results in a failure of Griffin's case, Novo Nordisk may move for a directed verdict or argue that to the jury.  The absence of an opinion is not a basis to preclude an expert.  Therefore, the court will only address the remaining grounds of (1) qualifications; (2) methodology; and (3) alternative explanations.

### B.    Qualifications

Novo Nordisk begins by generally stating the Rule 702 requirements and alleging that Dr. Goldhaber is unqualified.  See Mem. Preclude at 3-5.  However, nowhere in this

4

section does Novo Nordisk present a basis for <u>why</u> Dr. Goldhaber is not qualified as an expert in this case.  In its Memorandum, Novo Nordisk argues that Dr. Goldhaber is not qualified to be a damages expert, <u>id</u>. at 6, or to opine on in-hospital training.  <u>Id</u>. at 8. Dr. Goldhaber is not a medical or scientific expert or a damages expert.  <u>See</u> Pltf's Opp'n at 2.  Griffin describes this expert as "testifying based on his education, training, and experience in the field of warnings."  <u>See</u> Pltf's Opp'n at 7.

Griffin describes Dr. Goldhaber's qualifications, including but not limited to a Ph.D with four decades studying warnings, as well as published peer reviewed work on product warnings.  <u>Id</u>. at 8.  Dr. Goldhaber "disclaimed opinions on damages, design defect (in the engineering sense), nurse training standards, pharmacy standards, hospital administration, medical causation, and the legal doctrines governing warnings claims."  <u>Id</u>. at 9.  Griffin acknowledges that Dr. Goldhaber will not be testifying on standard of care for in-hospital nurse training, hospital administration, or pharmacy.  <u>Id</u>. at 10.  Instead, Dr. Goldhaber will be testifying about his opinion on the training sessions conducted by Novo Nordisk and the alleged inadequacy to convey the risk of latent backflow contamination.  <u>Id</u>.  This is an opinion on warnings, not on medical practice standard of care or damages.

Novo Nordisk presents no persuasive reason why Dr. Goldhaber is not qualified in the field in which his testimony is offered.  Griffin disclosed Dr. Goldhaber's education, experience, and acknowledges the limited topic on which he will offer expert opinions.  Therefore, Dr. Goldhaber is qualified to testify on the opinions offered in this Report.

C.    <u>Methodology</u>

Novo Nordisk argues that Dr. Goldhaber should be precluded from testifying because his opinions are not based on sufficient facts or data, and are not the product of reliable principles and methods.  <u>See</u> Mem. Preclude at 9.  Novo Nordisk argues that he conducted no human factor testing,[2] interviewed no nurses, and did not test any alternative warnings.  <u>Id</u>. at 10.  Additionally, Novo Nordisk argues that Dr. Goldhaber ignored critical facts regarding the nurse training courses which contradict his methodology in a similar latex glove MDL.  <u>Id</u>. at 11, 13.  Finally Novo Nordisk argues that much of his Report is boilerplate.  <u>Id</u>. at 12.

Griffin responds by noting that Dr. Goldhaber reviewed materials including Department of Health interviews and trainers' depositions, and used consistent methodology he had used in the past.  <u>See</u> Pltf's Opp'n at 12-15.  Additionally, Griffin argues that much of Novo Nordisk's argument goes to weight, not admissibility.  <u>Id</u>.

Griffin is correct.  At the time Dr. Goldhaber drafted his Report, he utilized multiple sources of data, including but not limited to the Department of Health interviews of Griffin nurses and Novo Nordisk trainer's depositions.  <u>Id</u>. at 13.  The nurses were interviewed after the pen sharing came to light in 2014, but the pen sharing had been occurring since 2008.  <u>Id</u>.  There is no reason to believe that interviewing a nurse about an incident occurring 11 to 18 years ago would provide more accurate information than the report generated from interviews conducted at the time of the incident.  Additionally, Novo Nordisk's argument regarding the number of nurses who attended training sessions goes to weight.  It is undisputed that five nurses who shared pens did not do

---

[2] It is unclear to this court who and what exactly Dr. Goldhaber was supposed to test, as Novo Nordisk is not specific in its memo what "testing" it expected.

6

Novo Nordisk's training.  Id. at 14.  Novo Nordisk focuses on the 116 nurses who did not share pens and who attended its training.  However, Dr. Goldhaber concludes that warnings should have been placed on the boxes and pens contained within.  Id. at 14.  The number of nurses who attended training and which ones did not, and who subsequently shared pens, goes to the weight of his testimony which is for the jury to decide.

Turning to the "alleged" boilerplate sections of the Report, Dr. Goldhaber testified that this is the standard exposition regarding his methodology, not his conclusions.  Id. at 15.  Daubert focuses on the principles and methodology of the testimony, and Dr. Goldhaber testified he utilizes the same standard exposition describing his methodological framework across cases.  Id.  Specifically, he says that the literature around warnings is explained in his Report, so the literature review overlap is the standard exposition of his methodology, not his case specific conclusions.  Id.

Dr. Goldhaber's opinion is based on sufficient facts and data and is the product of reliable principles and methods.  Therefore, Dr. Goldhaber demonstrates the required methodology to testify.  Any challenge that Novo Nordisk seeks to bring goes to weight and can be pursued before the jury during cross examination.

D.    Facts of the Case at Hand

Novo Nordisk asserted that Dr. Goldhaber's testimony does not address the facts of this case; fails to address alternative explanations, lacks sufficient analysis, is undermined by contradictory opinions, and is speculative.  See Mem. Preclude at 14-23.  First, Novo Nordisk argues that Dr. Goldhaber declined to opine on alternative explanations for the pen sharing incident; therefore, his opinions are conclusory.  Id. at 15.

Griffin argues that the cases relied upon by Novo Nordisk are misread, and Dr. Goldhaber did consider all the relevant facts at hand in this case.  Novo Nordisk relies upon two cases principally, Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004) and Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002), for support of its argument that an expert who does not rule out alternative causes should be precluded from testifying.  See Mem. Preclude at 11-12.  Griffin responds that the cases are not on point because they are fact specific to toxicologists opining on medical causation which is very different from a warnings expert.  See Pltf's Opp'n at 17-18.

The court agrees with Griffin.  Both cases involved toxic exposure and expert reports on medical causation.  See generally Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004) and Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002).  That is not present in this case.  Dr. Goldhaber considered and wrote in his Report about the different data used to build his opinion, including what the Griffin nurses were told, what materials were received by the nurses, the Department of Health interviews, and FDA public warnings.  See Pltf's Opp'n at 18.  Dr. Goldhaber's testimony relates to whether it is more likely than not that an adequate warning would have changed behavior.  Id.  He does not diagnose a specific cause of a medical disease: his testimony addresses the concept of warnings and their adequacy to alter behavior.

Second, Novo Nordisk challenges Dr. Goldhaber's testimony on multiple qualitative grounds.  See Mem. Preclude at 12-16.  These are duplicative of many of the earlier challenges.  For example, Novo Nordisk alleges that his opinions lack "sufficient

8

data and analysis." Id. at 16.  The court already discussed its view above and will not address it further.  See, infra, Part IV.B.

Third, Novo Nordisk argues that Dr. Goldhaber's opinions are irreconcilable with his other testimony on behalf of the defendant in a latex glove MDL; thus, his conclusions are results driven and should be precluded.  See Mem. Preclude at 18-21. Dr. Goldhaber applied the same methodological framework in both cases involving manufacturer awareness, user awareness, latency, warning design, and the possible effect of a proper warning.  See Pltf's Opp'n at 21.  There are significant factual differences between these two cases.  First, as Griffin points out, a latex allergy can be known inside and outside of health care.  Id. at 21.  Second, this case involves a latent backflow contamination from a newly developed insulin pen.  Dr. Goldhaber testified to precisely this distinction, explaining that familiarity with a product reduces attention to on-product warnings, whereas an unfamiliar product introduced into a new setting "should have had, absolutely had warnings on it."  See Goldhaber Dep. 204:7-205:3.  It is not surprising that Dr. Goldhaber would come to different conclusions using his methodology based on the different facts at hand in the case.  Novo Nordisk remains free to cross-examine Dr. Goldhaber, but his different testimony on two different cases is not grounds to preclude his opinion.

Fourth, Novo Nordisk argues that Dr. Goldhaber's opinion relies on conclusions formed after his Report was issued.  See Mem. Preclude at 21.  Specifically, that Dr. Goldhaber reviewed the depositions of Novo Nordisk trainers after he wrote his expert Report and he now holds a slightly different opinion.  Id.  Griffin acknowledges that the expert disclosure and deposition deadlines allowed Dr. Goldhaber to refine his opinion,

but argues that the opinions did not change.  See Pltf's Opp'n at 22.  Novo Nordisk had a full opportunity to examine Dr. Goldhaber on the final Report and opinions at a deposition, and it did so.  Id.  There is no prejudice or surprise to either party here.  Certainly, under all the circumstances present in this case, modifying the bases or analysis of the evidence in support of his opinions after receiving further information is no grounds to preclude testimony.

Fifth, Novo Nordisk argues that Dr. Goldhaber's opinion is speculative.  See Mem. Preclude at 21.  Novo Nordisk points to one line in Dr. Goldhaber's deposition statement that he was "conjecturing just as much as you are" about what was "in [a particular nurse's] head," id. (citing Goldhaber Dep. 159:9-20), and argues this statement requires exclusion of his opinion.  See Mem. Preclude at 21.  Dr. Goldhaber, in his testimony, is acknowledging that opinions given on warning compliance are expressed in terms of probable compliance, because no warnings expert can read the mind of any single individual as to what he or she would have done in light of a particular warning.  This is not engaging in any wrongful speculation, but instead how an expert on warnings methodologically addresses the likely effect of a warning.  See Pltf's Opp'n at 23-24.

Having considered Novo Nordisk's numerous arguments regarding the applicability of Dr. Goldhaber's opinions to the facts of this case, the court finds that none of these arguments warrants exclusion under Rule 702.  Any points Novo Nordisk has raised to the weight a jury can give to Dr. Goldhaber's testimony are properly explored at trial in cross examination.

E.      Dr. Goldhaber's Testimony is Not Precluded

Dr. Goldhaber is an expert who will be testifying based on his education, training, and experience in the field of warnings.  His testimony is relevant: Dr. Goldhaber's testimony is at the heart of the failure to warn claims.  Dr. Goldhaber has spent more than four decades studying warnings, safety communications, and warning compliance, in addition to publishing on the topic.  See Goldhaber Report at 4-8.  He reviewed the analysis of the pen sharing investigation conducted by the Connecticut Department of Public Health, including interviews of nurses and witnesses of the shared insulin pens; he reviewed the boxes containing the pens and inserts concerning the insulin pens; he reviewed the training lists with the attached materials; and he reviewed the various alerts and FDA warnings.  See Goldhaber Report at 2-3.  Dr. Goldhaber is clear in his Report that his opinions are derived from an application of methodology accepted by experts in the fields of warnings.  Id.  He then describes his approach in including a review of the published scientific literature, regulations, codes, documentation, and analytical scientific methodology.  Id. at 4-8.

His testimony and Report applied a methodology for identifying and discussing the facts relevant to this case.  Id.  He has limited his opinions, using the material reviewed and his methodology, to his expertise.  He does not offer opinions beyond his expertise, such as on an engineering design defect, nurse training standards, hospital administration, damages, or legal doctrines of warning claims.  See Goldhaber Dep. 7:14-16; 8:3-20; 9:24-10:13; 76:4- 7; 77:3-9; 135:15-17.  Dr. Goldhaber's methodology satisfies Daubert.

All of the Rule 702 factors are met.

11

F.    Rule 702 Hearing

Novo Nordisk requested a Rule 702 hearing.  The court denies such a request.

There is no need for a Rule 702 hearing, because both parties provided sufficient basis

within their papers upon which the court can base its decision.  Further, both parties had

a full opportunity to brief the matters.

## V.    CONCLUSION

For the reasons stated above, the court denies Novo Nordisk's Motion to

Preclude (Doc. No. 144).


## SO ORDERED.

Dated at New Haven, Connecticut this 24th day of July 2026.


  /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge