**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GRIFFIN HEALTH SERVICES CORP.,
ET AL                                                                          :                    CIVIL CASE NO.
     Plaintiff,                                                     :                    3:24-CV-1045 (JCH)
                               :
                               :
v.                                                                                      :
                               :
NOVO NORDISK INC                                             :                    JULY 24, 2026
     Defendant.                                              :

**RULING ON DEFENDANT NOVO NORDISK INC.'S MOTION FOR**
**SUMMARY JUDGMENT (DOC. NO. 113)**

## I.        INTRODUCTION

This lawsuit arises from Novo Nordisk's design, manufacture, and distribution of

two prefilled insulin delivery devices that Griffin used at its hospital.  Defendant Novo

Nordisk Inc. ("Novo Nordisk") filed a Motion for Summary Judgment on December 1,

2025.  The Motion addressed all claims brought before this court by plaintiffs, Griffin

Health Services Corporation and Griffin Hospital (together "Griffin").  See Defendant

Novo Nordisk Inc.'s Motion for Summary Judgment ("Mot. S.J.") (Doc. No. 113).  Griffin

filed an Opposition to the Motion.  See Plaintiff's Opposition to Defendant's Motion for

Summary Judgment ("Pltf's Opp'n") (Doc. No. 125).

For the reasons stated below, the court grants in part and denies in part Novo

Nordisk's Motion for Summary Judgment (Doc. No. 113).  The court grants Novo

Nordisk's Motion for Summary Judgment only with regard to the indemnification theory,

Count Five of the Complaint.  See, infra, Part IV.C.5.

## II.    BACKGROUND[1]

Novo Nordisk is the designer, manufacturer, and distributor of insulin pens used at Griffin Hospital from September 2008 to May 2014.  See Plaintiff's Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("56(a)(2) Stat.") at ¶ 1.  The insulin pens at issue are Novo Nordisk Novolog® Flexpen and Levemir® FlexPen, which pens are prefilled, disposable insulin delivery devices evaluated and approved by the FDA.  Id. at ¶ 2.  In August 2008, a checklist was developed called "Griffin Hospital FlexPen (Insulin Pen) Checklist Competency," which would be administered by the hospital and which checklist nurses had to master before being allowed to use the insulin pens.  Id. at ¶ 15.  The checklist did not include reference to the "Six Rights of Medication Administration," which included providing the insulin pen to the right patient.  Id. at ¶ 16.  The checklist did include, as item number 13, an instruction to return the FlexPen to the patient's individual medication drawer, which if followed, would prevent a nurse from sharing a pen with another patient.  Id.  From 2008 to 2014, Novo Nordisk representatives provided five training sessions on the NovoLog® and Levemir® FlexPens® to the nurses at Griffin Hospital.  Id. at ¶ 18.

---

[1] The facts presented in this section of the court's Ruling are taken from the parties' undisputed Statements of Fact, as presented in the Rule 56 Statements.  See Doc. No 126.  The court draws primarily from the parties' Local Rule 56(a) Statements in summarizing the undisputed material facts.  For ease of reference, the court cites to Griffin's Local Rule 56(a)(2) Statements where the parties agree because, in accordance with Local Rule 56(a)(2), Griffin's 56(a)(2) Statement contain a reproduction of each numbered paragraph from Novo Nordisk's Local Rule 56(a)(1) Statement, as well as Griffin's admissions and denials.  In addition, the court also relies on Griffin's Additional Statements of Facts if there is evidence cited in support of the statement.

In cases where Griffin denied a portion of a 56(a) Statement, the court reads the part not denied as admitted.  See, e.g., 56(a)(2) Stat. at ¶ 9.  If Novo Nordisk has come forward with evidence in support of its Statement and Griffin has cited evidence to support their denial in part, the court has treated the Statement to reflect the partial denial.  If the denial or partial denial does not have evidence to support it, the court deems the Statement admitted in that regard.  See Connecticut Local Rule 56(a)(3).

These sessions were voluntary, not mandatory, and they did not include all nurses at the hospital.  Id.

The  insulin pens that were designed, manufactured, and distributed by Novo Nordisk, Inc., were used at Griffin Hospital from September 2008 to May 2014.  See Plaintiff's Statement of Additional Material Facts in Opposition to Defendant's Motion for Summary Judgment at ¶ 1 ("PAMF") (Doc. 126, 27-33).[2]  The pens did not contain any warning label on the insulin pen itself that they were for "Single Patient Use Only."  Id.

Novo Nordisk only placed a "For Single Patient Use Only" warning label on their insulin pens after the FDA required Novo Nordisk to do so in February 2015, which was almost one year after Griffin Hospital discovered that members of its nursing staff had used insulin pens on multiple patients.  Id. at ¶ 2.  The FDA concluded that multiple factors – including the lack of appropriate label warnings – may have contributed to insulin pens being used on more than one patient.  Id.

From September 2008 to May 2014, neither the box containing the insulin pens, nor the package inserts, which contained instructional information, provided any warning advising users of the pens of the risk of backflow of biological materials and risk of bloodborne infections if insulin pens were used on more than one patient.  Id. at ¶ 3.[3]

---

[2] Novo Nordisk asserts that the pens had warnings on their boxes and in package inserts and provided pictures of these items in their 56(a)(1) Statement of Facts.  In support of this fact Novo Nordisk cited Steenfeldt-Jensen Decl. at ¶¶ 4-6:1.  However, the asserted support is not present.  See 56(a)(2) Stat. at ¶ 3.  Nowhere in the Declaration cited, nor in the separate report referenced, did the expert address the warnings, boxes, or package inserts.  See generally Steenfeldt-Jensen Decl. Defendant's Ex. E.

If any Statement is not supported by evidence, the court deems the Statement not admitted and thus does not accept the asserted fact.  See Connecticut Local Rule 56(a)(3).  Novo Nordisk's 56(a)(2) Stat. at ¶ 3 is not supported by evidence; therefore, it is not accepted by this court for the purposes of the Motion for Summary Judgment.

[3] See n. 2.

During the same time period, Novo Nordisk sent employees to Griffin Hospital to conduct  training sessions on the use of their insulin pens.  Id. at ¶ 4.  During such training sessions, the Novo Nordisk employees provided training materials and "demonstration pens" to hospital nurses.  Id.  Neither the training materials nor the demonstration pens contained any warnings that the insulin pens were for "single patient use only" nor did they provide any information regarding the risk of backflow of biological materials and resulting bloodborne infections.  Id.

In 1998, the journal Diabetes Care published the results of a study which identified a risk of biological materials becoming trapped in the insulin pen delivery system; the study specifically tested several of Novo Nordisk's insulin pen devices.  Id. at ¶ 6.  In March 2008, the Institute for Safe Medication Practices issued a Safety Alert, "Cross Contamination with Insulin Pens," in which it reported that an individual's insulin pen might be used on another patient as nurses in hospitals were unaware of the risk of biological contamination.  Id. at ¶ 7.  In March 2009, the FDA issued another alert and reported that it had received information that insulin pens had been shared among over two thousand patients at two hospitals in Texas.  Id. at ¶ 8.  In 2012, the CDC issued a reminder warning that the ongoing practice of using insulin pens on multiple patients poses a severe risk of bloodborne pathogen transmission, highlighting a continued lack of awareness among some healthcare personnel despite previous alerts.  Id. at ¶ 9.

On March 1, 2013, a class action lawsuit against Novo Nordisk was commenced in New York Supreme Court, alleging that, between 2009 and 2013, Novo Nordisk failed to provide proper instructions and warnings regarding the use of multi-dose insulin pens

to hospital staff.  Id. at ¶ 11.[4]  Novo Nordisk did not affix any warning label to their insulin pens until February 2015 when the FDA required them to do so.  Id. at ¶ 12. Novo Nordisk failed to disclose to its Institutional Sales Representative employees that insulin pens were being used on multiple patients in some hospital settings.  Id. at ¶ 13. These employees provided in-service training sessions to the nurses at Griffin Hospital. Id.  On July 21, 2010, Novo Nordisk sales representative George Jordan created a territory sales plan aimed at maintaining Griffin Hospital's exclusive use of their insulin pen products, which identified challenges such as possible competitor activity and the misuse of pens by nursing staff and patients upon discharge.  Id. at ¶ 14.

Novo Nordisk's Medical Affairs Department created "Instructions for Use" for its insulin pens that were used during in-service trainings at institutions like Griffin Hospital; the instructions contained no reference to the pens being intended for single patient use only.  Id. at ¶ 16.  Novo Nordisk created and provided to Griffin Hospital additional material directing the reader to the "Important Safety Information," which information made no reference to the insulin pens being limited to a single patient use because of possible cross-contamination if pens were shared.  Id. at ¶ 17.

On March 11, 2014, Novo Nordisk sent an employee, Kathleen Van Havere, to Griffin Hospital to conduct a training session in insulin pen usage and administration. Id. at ¶ 18.  Ms. Van Havere testified it was unusual for her to provide such training to nurses, and it was the first time she had ever done so.  Id.  None of the materials provided during the March 11 training contained any warning that insulin pens should not be shared due to the risk of infections.  Id. at ¶ 19.  Further, the nursing staff was

---

[4] See Nolan v. Olean General Hospital, et al., 0081162/2013 (N.Y. Sup. Ct. Cattaraugus Cnty. filed Mar. 1, 2013)

not instructed that insulin pens were for single patient use only.  Id.  Ms. Van Havere testified that, during the training session, a nurse asked if the pen could be used on more than one patient.  Id. at ¶ 20.  Having heard that question Ms. Van Havere nonetheless did not advise her manager or warn anyone at Griffin Hospital about the potential implications and risks suggested by the nurse's question.  Id.  Ms. Van Havere testified she told the nurse that the pens cannot be shared due to the risk of cross-contamination.  See 56(a)(2) Stat. at ¶ 23.

On May 7, 2014, Griffin Hospital had implemented a patient safety initiative which involved a multi-department, hospital-wide safety huddle at 11 am each day.  Id. at ¶ 29.  At the safety huddle, a doctor noted that she had heard a concern from a pharmacist who had been asked by a nurse if the pens were to be used on more than one patient.  Id. at ¶ 30.  In response to this safety huddle, Griffin Hospital CEO directed Administrator Kelly Egan to lead an investigation and to develop a written questionnaire, using it to interview approximately 150 nurses that used the insulin pens.  Id. at ¶ 32.  The interview form was preserved, but the documents reflecting the results of the interviews, including details of pen sharing, have been lost.  Id. at ¶ 33.

Following this discovery, in May 2014, that Novo Nordisk's insulin pens were shared between different patients, the Connecticut Department of Public Health (CDPH) conducted an investigation into the incident.  See 56(a)(2) Stat. at ¶ 21.  As part of the investigation, the CDPH investigators reviewed the education materials provided to hospital staff by Novo Nordisk and concluded that the information "failed to indicate that insulin pens were intended for single patient use only."  Id.  CDPH interviewed hospital staff and identified at least 12 nurses who reported they had not been instructed that

insulin pens were single patient use only.  Id. at ¶ 22.  Griffin Hospital provided the CDPH with a complete list of all the nurses who admitted using insulin pens on multiple patients, and the CDPH interviewed 20 nurses.  Id. at ¶ 26.

Griffin Hospital's Director of Pharmacy testified that the pharmacy did not disregard any warnings about the insulin pens.  Id. at ¶ 23.  The representatives of the product manufacturer first provided product information to the Pharmacy Department.  Id.  Griffin Hospital's CEO testified that there sometimes are situations where adherence to the strict hospital medication administration policy is not possible and would not result in harm to a patient.  Id. at ¶ 25.  Griffin's CEO testified that there can be circumstances where the right medicine, in the right dosage, is given to the right patient at the right time, but from a supply that was on the floor for a different patient.  Id.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine

whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.    Griffin Disclosed their Expert Witness

In December 2025, Griffin disclosed their expert witness, Dr. Goldhaber. See Plaintiff's Exhibit 2. The court incorporates here and adopts its analysis of its Ruling on Novo Nordisk's Motion to Strike Report and Testimony of Dr. Goldhaber. See Ruling on Novo Nordisk's Motion to Strike Report and Testimony of Dr. Goldhaber (Doc. No. 159). The court had granted Griffin's Motion for Extension of Time to disclose their expert witness. Id. Despite being on notice of an imminent disclosure of Griffin's expert witness, less than five days after Griffin had sought an extension of time, Novo Nordisk's counsel filed its Motion for Summary Judgment, arguing that Griffin had not disclosed their expert witness. See Motion for Summary Judgment.

To the extent the Motion for Summary Judgment filed by Novo Nordisk is based on Griffin's alleged non-disclosure of their Expert Witness, it is denied. The court will not address any of Novo Nordisk's copious allegations about a lack of expert witness in its original Motion for Summary Judgment.

The court incorporates and adopts its analysis of its Ruling on Novo Nordisk's Motion to Preclude the Testimony of Dr. Goldhaber. See Ruling on Novo Nordisk's Motion to Preclude the Testimony of Dr. Goldhaber (Doc. No. 160). The court ruled that Dr. Goldhaber is qualified to testify and his opinions are admissible. Id.

8

B.    Wrongful Conduct Rule Does Not Apply

Novo Nordisk argues that Griffin's suit is barred by the wrongful conduct doctrine. See Mot. for SJ at 23.  It argues that, because Connecticut prohibits a plaintiff from recovering from injuries sustained as a direct result of his or her intentional or knowing participation in an illegal act, Griffin should not recover.  Id.  Novo Nordisk cited multiple statutes in support for its claims that Griffin should be barred from profiting from their own wrongful conduct because Griffin gave one patient's prescription medication to another patient, which is against federal and state law, as well as hospital policy.  Id. at 24-25.

Griffin argues that Novo Nordisk misinterprets the cited law and, further, there is no support for Novo Nordisk's position.  See Pltf's Opp'n at 18.  Griffin noted that the Hospital is not seeking to recover from an illegal activity in which it participated; rather, their claim is premised on the harm caused by Novo Nordisk's lack of information provided through training and the inadequate warning on the new insulin pen product. Id.  Griffin is correct.  The statutes cited are not applicable to the facts in this case. Novo Nordisk has failed to provide facts or law that supports its assertion of the wrongful conduct doctrine argument in this case.

The generally articulated, common-law "wrongful conduct" doctrine provides that a plaintiff cannot maintain a tort action for injuries that were sustained as the direct result of his or her knowing and intentional participation in a criminal act.  See Greenwald v. Van Handel, 311 Conn. 370, 377 (2014).  First, it bears noting that this case does not involve a criminal act; instead, Griffin argues that there were problems with the lack of warning and lack of proper training for a new product, which problems and lack of training led to mistakes.  See  Pltf's Opp'n at 18.

9

Novo Nordisk has cited to two statutes, 21 U.S.C § 841(a) and Conn. Gen. Stat. § 21a-277(a), in its Statement of Facts as support for its wrongful conduct argument, claiming the statutes prohibit medication from being shared.  See 56(a)(2) Stat. at ¶ 6. Novo Nordisk argues that Griffin's multiple use of the pen for different patients is the wrongful conduct that should bar Griffin's claims.  However, neither of these statutes is applicable to the facts at hand for a variety of reasons.  First and foremost, they both involve controlled substances; the medicine in the pens at question here, insulin, is not a controlled substance.  See Aro HJ, Hussain A, Bobrin BD. Controlled Substances (Archived). In: StatPearls. Treasure Island (FL): StatPearls Publishing; April 8, 2023; see, also, Drug Enforcement Admin., *Controlled Substances – Alpha Order*, https://www.deadiversion.usdoj.gov/schedules/orangebook/c_cs_alpha.pdf (last visited May 22, 2026); see also 21 U.S. Code § 802(6) (controlled substance means a drug or other substance included in schedule I, II, III, IV, or V of part B of this subchapter); see, also, Conn. Gen. Stat. § 21a-240 (Insulin is not on the list of Definitions of Dependency Producing Drugs).  The other statutes cited in Novo Nordisk's Motion for Summary Judgment, see Mot. for SJ at 24, either apply to controlled substances, which are not at issue here, see generally Conn. Gen. Stat. § 21a-266 (a), or are statutes regarding the removal of labeling for sale, which is not applicable here, see generally  21 USC § 331(k).[5]

---

[5] Insulin is not on the list of Controlled Drug Schedules by the Drug Control Division of the Department of Consumer Protection.  See Schedules of Controlled Substances, Regs. of Conn. State Agencies §§ 21a-243-7 to -11, Conn. eRegulations Portal, https://eregulations.ct.gov/eRegsPortal/Browse/RCSA/Title_21aSubtitle_21a-243/ (last visited July 10, 2026)

The court denies Novo Nordisk's Motion for Summary Judgment based on the wrongful conduct doctrine.

### C.     Griffin's Connecticut Product Liability Claims

#### 1.     Design Defect

Novo Nordisk argues that Griffin has not provided any evidence, expert or otherwise, relevant to the issue of whether the insulin pens at issue were defectively designed.  See Mot. for SJ at 26.  Novo Nordisk argues that Griffin's own witnesses, two doctors, testified that the alleged risk of backflow was probably zero and was never proven.  Id.  Novo Nordisk argues Connecticut applies the modified consumer expectation test where the product involves complex designs.  Id. (citing Izzarelli v. R.J. Reynolds Tobacco Co., 321 Conn. 172 (2016)).[6]  Novo Nordisk argues that the failure to establish the several essential elements of this test warrants summary judgment.  Id. (citing Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 221 (1997)).

Griffin responds that the insulin pen is a medical device which is inherently unsafe, which means the manufacturer has a duty to properly warn of the dangers.  See Pltf's Opp'n at 20 (citing Glover v. Bausch & Lomb, 343 Conn. 513, 532 (2022)). Additionally, Griffin argues that Dr. Goldhaber, Griffin's expert, supports its claims.  See Pltf's Opp'n at 21.  The court has already determined that Dr. Goldhaber is qualified as Griffin's expert and that his opinions are admissible.  See, supra, Part IV.A.

Although Potter guides a fact finder in product liability cases, it does not require Griffin to establish all the factors noted in Potter before trial.  See Potter v. Chicago

---

[6] The Supreme Court in Potter developed this modified consumer expectation test.  Under the modified consumer expectation test, "the jury would weigh the product's risks and utility and then inquire, in light of those factors whether a reasonable consumer would consider the product design unreasonably dangerous".  See Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 221 (1997).

Pneumatic Tool Co., 241 Conn. 199, 221 (1997).  A reasonable jury could find that Griffin was unaware of any risk, and that Novo Nordisk failed to warn or train users on the dangers of contamination.  Griffin is not required to prove there was a feasible alternative design.  Id. at 218.  Summary judgment on the design defect claim is therefore denied.

   2.  Failure to Warn

  Novo Nordisk argues that, under Conn. Gen. Stat. § 52-572q(a), a "product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided." See Mot. for SJ (citing Conn. Gen. Stat. § 52-572q(a)).  Further, Novo Nordisk argues that Griffin must establish: "(1) the likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions."  See Mot. for SJ at 27 (citing Conn. Gen. Stat. § 52-572q(b)).  Finally, Novo Nordisk argues that, under the "learned intermediary doctrine," the manufacturer of a prescription pharmaceutical or medical device is not required to provide a warning to the ultimate consumers; instead, the "doctrine provides that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly." See Mot. for SJ at 27 (citing Breen v. Synthes-Stratec, Inc., 108 Conn. App. 105, 110-112 (2008)).

  Novo Nordisk asserts that there is no dispute that the three Novo Nordisk representatives who conducted training sessions at Griffin: (1) warned the

attendees not to share Novo Nordisk's insulin pens; (2) warned the attendees that doing so could result in cross-contamination due to the risk of backflow; and (3) provided the attendees with copies of the package inserts, which also contained these warnings.[7] See Mazzatto Dep. 75:8-24, 77:23-78:14; Jordan Dep. 27:25-28:4, 28:19-29:11, 32:9-18; and Van Havere Dep. 59:18-60:21; 186:19-25.  Novo Nordisk notes that Griffin's CEO testified that "Novo Nordisk is only responsible for the training of the people who showed up at the training session."  See Charmel Dep. 70:5-22.[8]

Lastly, Novo Nordisk argues that the failure to warn claim fails because of a lack of expert testimony.[9]  It then argues that, if a plaintiff is already aware through general knowledge, then a warning would make no difference, and any failure to warn is not a cause of the harm.  See Mot. for SJ at 30 (citing Khusenov v. Prokraft Inc., No. 23-320-CV, 2024 WL 959620, at *4).

Griffin counters that there are material issues of fact, and these claims cannot be decided by the court at summary judgment.  See Pltf's Opp'n at 25-28.  Specifically, Griffin asserts that the training materials do not have warnings that the pens are for single use.  See Pltf's Ex. 9-11.  Additionally, Griffin asserts that Novo Nordisk was required to redesign and relabel its pens after learning of significant issues at other hospitals and letters from the FDA.  Id. at Ex. 3.  Griffin further argues that Federal Rule of Evidence 407, which generally excludes evidence of subsequent remedial measures, does not bar the expert testimony here because the feasibility of those remedial

---

[7] However, there is also evidence in the record to the contrary, so for the purposes of a Motion for Summary Judgment, Novo Nordisk's "facts" are not taken as fact.  See PAMF at ¶¶ 3, 4, 17, 19.

[8] While accurate as to the statement, it is taken out of context.  On the next line, Griffin's CEO specifically clarified his statement that, as to a question of responsibility, he could not say.  Id.

[9] The court will not address this argument again as it is moot.  See, supra, Part IV.A.

13

measures is directly at issue in this case.  See Pltf's Opp'n at 29.  Under Rule 407's feasibility exception, when a party contests whether a precautionary measure was feasible, evidence of that measure may be admitted.  See F.R.E. 407.  Griffin contends that this determination, whether the remedy was feasible, is a factual question that must be resolved by the jury and supported by expert testimony, not decided by the court as a matter of law.  See Pltf's Opp'n at 29.

Insulin pens are medical devices and thus inherently unsafe devices.  See Hurley v. Heart Physicians, P.C., 278 Conn. 305, 317 (2006) (certain products, such as prescription drugs and medical devices, are inherently unsafe).  A manufacturer of such inherently unsafe products can avoid liability under the CPLA for injuries that they cause only if the products are properly prepared and accompanied by proper directions and warnings. See id. at 315 (emphasis added).  "Generally, a manufacturer's duty to warn of dangers associated with its products pertains only to known dangers and runs to the ultimate user or consumer of those products." (Internal quotation marks omitted).  See id. at 316.

The Connecticut Supreme Court has recognized an exception to this general rule, however, for warnings related to prescription drugs and medical devices.  Id. at 316-317.  The exception, known as the learned intermediary doctrine, provides that "adequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly.  The doctrine is based on the principle that prescribing physicians act as learned intermediaries between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and [to] assess [the] risks and benefits of a particular course of

14

treatment." (Internal quotation marks omitted.)  Id. Thus, the doctrine is a specific application of the more general rule set forth in section 52-572q (d) of the Connecticut General Statutes, which the Connecticut Supreme Court has interpreted to mean that a manufacturer has a "duty . . . to provide suitable warnings to the person best able to take or recommend precautions against the potential harm." See Vitanza v. Upjohn Co., 257 Conn. 365, 382 (2001) (internal quotation marks omitted) .  Here Griffin obtained the insulin pens directly from Novo Nordisk, not from an intermediary and, as the end users of the insulin pens, warnings should have been made to Griffin.  Because a genuine dispute of material fact exists as to whether Novo Nordisk provided any warnings at all, the learned intermediary doctrine cannot resolve this Motion for Summary Judgment.

Alternatively, even if the learned intermediary doctrine does apply, it does not support Novo Nordisk's Motion for Summary Judgment.  Griffin's claims are based on failure to warn the hospital in the persons of its doctors and nurses, the learned intermediaries.

Turning to the design defect theory, Connecticut General Statute section 52-572q(b) sets forth the factors for the trier of fact to consider.  There exist material issues of fact regarding the factors laid out and as to which experts will testify.  For example, a reasonable jury could conclude that the device constructed with internal barriers reduced the risk for backflow but did not eliminate it; because that design defect still remained, appropriate warnings were required.  There are clearly material issues of fact as to warnings in this case.  This claim is not appropriate for summary judgment and

must be decided by a jury.  Therefore, the Motion for Summary Judgment as to the design defect theory is denied.

Turning to the failure to warn theory, Griffin's expert was disclosed and will testify as an expert on the adequacy of the training and adequacy of warnings.  Griffin argues that they obtained the defective insulin pens directly from Novo Nordisk, who failed to adequately train or warn the hospital staff.  See Pltf's Opp'n at 23.  Griffin asserts that neither the pens at issue, nor the boxes the pens were in, displayed warnings.  See 56(a)(2) Stat. at ¶¶ 1, 2.  Further, Griffin asserts that in person training provided by Novo Nordisk failed to encompass warnings or highlight the risk of the pens at issue. Id. at ¶¶ 5, 6, 19.

There are material issues of fact as to what was entailed in the training Novo Nordisk gave, and what warnings were on the pens, what training exactly was provided, and what risks were highlighted.  Therefore, summary judgment as to the failure to warn and failure to train theories is denied.

### 3.     Negligence

Novo Nordisk argues that, under Connecticut law, separately pled negligence and product defect claims are treated as a "single CPLA cause of action" for which expert testimony is required in complex product liability cases. [10]   See Mot. for SJ at 32

---

[10] The court views all common law claims asserted as a basis of the CPLA cause of action, or "theory."  The CPLA creates a consolidated cause of action for all product liability claims. The CPLA provides that "Product Liability Claims" as defined in section 52–572m "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty for harm caused by a product."  See Lamontagne v. E.I. Du Pont de Nemours & Co., 834 F. Supp. 576, 587 (D. Conn. 1993), aff'd, 41 F.3d 846 (2d Cir. 1994).

Accordingly, an action alleging harm from a product due to negligence, for example, may not be pled as a separate common law claim but may only be asserted as a part or basis of the CPLA claim.  Id.

The consolidated cause of action created by the CPLA means that all product liability claims are bases for one cause of action, and these bases are all governed by a uniform procedure, a uniform set of

(citing <u>Dunning v. Nat'l R.R. Passenger Corp.,</u> No. 3:13-CV-00635 JCH, 2014 WL 4275508 (D. Conn. Aug. 28, 2014).  It argues that, because Griffin's negligence theory mirrors its product liability claims, the negligence theory should be dismissed as well. <u>See</u> Mot. for SJ at 32.

Griffin argues that it has disclosed an expert, that <u>Dunning</u> does not apply, and that there are material issues of fact.  <u>See</u> Pltf's Opp'n at 30.  The court has already discussed the issue of Griffin's expert.  <u>See</u>, <u>supra</u>, Part IV.A.  Additionally, <u>Dunning</u> does not apply as there was, in that case, no expert disclosed and no connection between the plaintiff in that case and the subsequent injury.  <u>See</u> <u>Dunning</u>, No. 3:13-CV-00635 JCH, 2014 WL 4275508 (D. Conn. Aug. 28, 2014).

The factual elements of the negligence claim involve issues of alleged improper training.  Griffin argues that proper training would have potentially alleviated the risk of damage.  <u>See</u> Pltf's Opp'n at 30.  There are material issues of fact regarding what the training involved.  For example, Griffin has come forward with evidence that neither the training materials nor the demonstration pens contained warnings that the pens were for single patient use only or provided information regarding the risk of backflow.  <u>See</u> PAMF at ¶ 4.  Therefore, summary judgment as to the negligence basis for the claim is denied.

---

remedies, and a single statute of limitations.  <u>Id</u>.  The CPLA retains the plaintiff's right to allege the traditional theories of recovery along with the statutory basis for recovery under one unified count denominated as a product liability cause of action.  <u>Id</u>.

The court views the negligence "claim" asserted here as a theory or basis for the CPLA claim.

4.      Negligent Misrepresentation

Novo Nordisk argues that Griffin has offered no proof of any of the required elements of a negligent misrepresentation claim, as alleged as a basis or theory for a CPLA claim.  See Mot. for SJ at 33.  Specifically, Novo Nordisk argues that Griffin's witnesses say that the witnesses neither heard nor relied on any alleged misrepresentations of fact.  Id. (citing Charmel Dep. 30:8-12; Zaleha Dep. 42:22-43:3).

Griffin responds that Novo Nordisk is misreading the Second Amended Complaint and attempting to convert the claim from misrepresentation by omission into a claim of misrepresentation by way of false representation.  See Pltf's Opp'n at 31.

Under Connecticut law, negligent misrepresentation requires a plaintiff to establish: (1) that the defendant made a misrepresentation of fact; (2) that the defendant knew or should have known was false; and (3) that the plaintiff reasonably relied on the misrepresentation; and (4) suffered pecuniary harm as a result.  See Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship, 309 Conn. 342, 351-52 (2013).  A negligent misrepresentation claim may be based on a defendant's omissions as well as a defendant's failure to speak.  See Off. Furniture Rental All., LLC v. Liberty Mut. Fire Ins. Co., 981 F. Supp. 2d 111, 120 (D. Conn. 2013); see Johnnycake Mountain Assocs. v. Ochs, 104 Conn. App. 194 (2007).  Liability for negligent misrepresentation may be placed on an individual when there has been a failure to disclose known facts or an occasion which imposes a duty to speak, such a duty is imposed on a party insofar as he voluntarily makes disclosure; a party who assumes to speak must make full and fair disclosure as to the matters about which he presumes to speak.  Id. at 206.

In paragraphs 57-62 of its Second Amended Complaint, Griffin alleges negligent misrepresentation by way of omission as a basis or theory for the CPLA claim.  See

18

Second Amended Complaint ¶¶ 57-62.  Griffin has alleged that Novo Nordisk made negligent and critical omissions about the insulin pens and backflow through its lack of training and warnings.  See generally id.  Further, Griffin has come forward in opposition to this Summary Judgment with evidence to support its claim.  See generally PAMF.

Novo Nordisk's Motion on this theory does not address the alleged failure of Novo Nordisk to disclose key facts, but instead addresses a claim based on misrepresentation through affirmative statements.  See Mot. for SJ at 33.  Griffin's claim as pled has not been addressed by the Motion, and therefore summary judgment as to the negligent misrepresentation theory is denied.

5.      Indemnification

Novo Nordisk argues that Griffin failed to offer an expert or other proof to meet the elements of an indemnification theory.  See Mot. for SJ at 34.  Novo Nordisk relies on its analysis that Griffin cannot establish the required elements: Novo Nordisk was not negligent nor was it in control of the situation to the exclusion of Griffin.  Id.

Griffin responds that its claim is not exclusively about failing to properly warn. Rather, its claim also involves a failure to properly train and that Griffin laid out its indemnification claims in the Second Amended Complaint.  See Pltf's Opp'n at 33.

The Connecticut Supreme Court first recognized a claim for common-law indemnification as an exception to the rule that ordinarily there is no right of indemnity or contribution between joint tortfeasors.  See Fission Consulting, LLC v. Delaware N. Am., LLC, No. X08-FST-CV-24-6066340-S, 2025 WL 3281548, at *4 (Conn. Super. Ct. Nov. 19, 2025).  The rationale for this exception is that, "[w]here . . . one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it

19

and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury." Id. (citing Bristol v. Dickau Bus Co., 63 Conn. App. 770, 773 (2001)).

Under Connecticut law, to succeed on a common-law indemnification claim, a party must prove:

> (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence rather than defendant's own passive negligence was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.

See Smith v. New Haven, 258 Conn. 56, 66 (2001).  Griffin cannot establish the third element, that Novo Nordisk was in exclusive control of the situation.  Although a reasonable jury could find that Novo Nordisk manufactured a product with a defect, Novo Nordisk provided training to Griffin, and failed to adequately warn Griffin, Novo Nordisk had no control over five of the nurses who shared unsealed insulin pens, who did not attend a Novo Nordisk training session before the sharing incidents.  See e.g., 56(a)(2) Stat. at ¶¶ 35, 39, 41.  Novo Nordisk also offers the unrebutted opinions of two of its experts, Jonathan Shaatal and Dr. Brigid Joseph, who assert that Griffin was at all times in control of the nurses that worked for it, including their training, and Griffin's responsibility was to ensure that nurses followed hospital policy.  See Shaatal Decl. ¶ 12, Ex. MM; Joseph Dec. ¶ 11, Ex. LL.  Griffin's CEO also admits it is within Griffin's control to train and be responsible for the nurses.  See 56(a)(2) Stat. at ¶ 10, Charmel Dep. 34:15-35:1, Ex. A.

20

Griffin does not assert any facts or cite to any evidence on the record that Novo Nordisk was in control of the situation to the exclusion of Griffin. Griffin has not come forward with any material issues of fact regarding the third element of the common law indemnification theory. Therefore, Novo Nordisk's Motion for Summary Judgment regarding the indemnification theory is granted based on training.[11]

D.    Breach of Implied Warranty of Merchantability

Novo Nordisk argues that Griffin cannot establish any of the elements of the theory of breach of implied warranty. See Mot. for SJ at 34-35. Griffin argues that, under Connecticut law, a product liability claim is applicable for a variety of defects, including if the damages are caused by defective "packaging or labeling of any product." See Hurley v. Heart Physicians, P.C., 278 Conn. 305, 325 (2006).

Certain products, such as prescription drugs and medical devices, are inherently unsafe. See Glover v. Bausch & Lomb, Inc., 343 Conn. 513, 531 (2022) (citing Hurley v. Heart Physicians, P.C., 278 Conn. 305, 317 (2006)). A manufacturer of such products can avoid liability under CPLA for injuries that it causes only if the products are properly prepared and accompanied by proper directions and warnings. Id. Griffin has come forward with evidence that the insulin pens were defective and unreasonably dangerous and that the warnings on the products were insufficient. See 56(a)(2) Stat. ¶¶ 12, 13, 19, 24; see, also, PAMF at ¶¶ 1, 2, 3, 4, 5.

Clearly, there exists a material issue of fact. Therefore, summary judgment is denied as to the breach of implied merchantability theory.

---

[11] It does not appear Griffin moved on any other theory of indemnification.

21

E.    Punitive Damages

Under the CPLA, Conn. Gen. Stat. § 52-240b, "punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product use . . . if the trier of fact determines that punitive damages should be awarded."

Novo Nordisk argues Griffin has not come forward with any evidence to support an award of punitive damages under Connecticut product liability law. See Motion for S.J. at 35-36. Specifically, Griffin has not provided evidence that Novo Nordisk was aware of the defects and willfully, wantonly, and recklessly failed to eliminate the defects. Id.

Griffin argues that, under Connecticut law, punitive damages are applicable. See Pltf's Opp'n at 35. Griffin has come forward with evidence that Novo Nordisk knew that other hospitals were encountering similar issues with the insulin pens, but failed to take action to warn or mitigate the damage. See Pltf's Opp'n at 35; see, also, PAMF at ¶¶ 4, 5, 6, 7, 8, 9, 10. Griffin has come forward with evidence, including a class action lawsuit, Nolan v. Olean General Hospital, et al., filed in New York Supreme Court, against Novo Nordisk, in which it was alleged that Novo Nordisk failed to provide proper instructions and warnings to another hospital regarding the insulin pens. See PAMF at ¶ 11. Griffin asserts that, despite this lawsuit, multiple reports, and government alerts, Novo Nordisk continued to fail to correct the unsafe design or warn hospitals about the use of the insulin pens. Id. at ¶ 12. Thus, the jury could, based on this evidence and as provided by the statute, award punitive damages. Therefore, summary judgment is denied as to punitive damages.

F.    <u>Spoliation of Evidence</u>

Novo Nordisk asserts that numerous items had been lost or discarded despite a legal hold.  <u>See</u> 56(a)(2) Stat. at ¶ 45.  However, Griffin disputes this, pointing out that Novo Nordisk has little evidence supporting its claim, including that there was no letter seeking a legal hold or failure to preserve evidence.  <u>Id</u>.

Novo Nordisk argues that it is entitled to an adverse inference that the discarded or lost documents would have supported its defenses.  <u>See</u> Mot. for SJ at 36.  Griffin argues that, as addressed in detail in their denial of 56(a)(2) Stat. ¶ 45, some documents were lost by other lawyers, and some documents were exhibits marked and maintained by the lawyers in <u>Diaz v. Griffin Hospital</u>, No. UWY-CV15-6029965-S (Conn. Super. Ct. 2015) that could not be produced when this case began, but Novo Nordisk has not come forward with any evidence that any documents were destroyed, as opposed to lost or misplaced.  <u>See</u> Pltf's Opp'n at 36.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. <u>See</u> <u>generally</u> Black's Law Dictionary 1401 (6th ed.1990). It has long been the rule that spoliators should not benefit from their wrongdoing.  <u>See</u> <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999); <u>Scales v. Webster Bank, N.A</u>., No. 3:24-CV-50 (VAB), 2025 WL 1207397, at *7 (D. Conn. Apr. 25, 2025).  A district court, even without a discovery order, may impose sanctions for spoliation, exercising its inherent power to control litigation.  <u>See</u> <u>Hoffer v. Tellone</u>, 128 F.4th 433, 437-439 (2d Cir. 2025).  The court has broad discretion in crafting a proper sanction for spoliation, and the award of sanctions lies within a court's discretion.  <u>Id</u>.  Imposition of a sanction under Federal Rule of Civil Procedure 37(e), which addresses spoliation of digital

23

records, requires a finding of an intent to deprive another party of the information's use in litigation.[12]  Id. at 438.

In this case, Novo Nordisk asserts in its 56(a) Statement that " it appears" Griffin never took steps to preserve evidence or issued a legal hold.  See 56(a)(2) Stat. ¶ 45. Griffin denies the Statement, asserting it is a legal argument, but acknowledges that some documents could not be located.  Id.  Griffin asserts that the materials associated with the Diaz case were maintained and produced.  Id.  Griffin denies that numerous relevant items have been lost or discarded.  Id.  In 56(a)(2) Stat. ¶ 45, the evidence cited by Novo Nordisk, Correspondence Ex. S, does not support its asserted Statement. Ex. S does not address any legal holds or a failure to preserve evidence.  See Novo Nordisk Correspondence, Ex. S.  As this Statement is not supported by admissible evidence, it is not admitted for the purposes of the Motion for Summary Judgment because the party asserting the fact does not provide an evidentiary basis for the alleged fact.  See, supra, n. 2.

The only other 56(a)(2) Statement relating to "lost" documents is 56(a)(2) Stat. ¶ 33.  It states that the interview form Griffin used to interview the 150 nurses was preserved, but the documents reflecting the results of the interviews were lost.  See 56(a)(2) Stat. at ¶ 33.  Griffin admits this Statement.  Id.

There is only one admitted fact relating to lost documents, 56(a)(2) Stat. ¶ 33, because the other fact is not admitted, 56(a)(2) Stat. ¶ 45.  The documents show that the interview results were lost.  However, by examining 56(a)(2) Stat. ¶¶ 33 and 45, the documents were not found in the Diaz case in 2014.  This does not suggest spoliation in

---

[12] Nothing in the record suggests that any lost records were in digital format.

24

this litigation.  The documents were lost; there is no evidence on the record suggesting these documents were destroyed or altered.  See Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001).  This admitted fact, 56(a)(2) Stat. ¶ 33,  does not provide any evidence of willfulness, bad faith, or fault on the part of Griffin relating to their inability to locate evidence.  Therefore, summary judgment on the ground of spoliation is denied.

## V.    CONCLUSION

For the reasons stated above, the court grants in part and denies in part Novo Nordisk's Motion for Summary Judgment (Doc. No. 113).  The court grants Novo Nordisk's Motion for Summary Judgment in part with regard to the indemnification theory alleged in Count Five of the Complaint.  See, supra, Part IV.C.5.  The court denies Novo Nordisk's Motion for Summary Judgment in all other respects.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of July 2026.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge