**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GRIFFIN HEALTH SERVICES CORPORATION D/B/A GRIFFIN HOSPITAL; GRIFFIN HOSPITAL<br><br>Plaintiff,<br><br>vs.<br><br>NOVO NORDISK, INC.<br><br>Defendant. | Civil Action No.: 3:24-CV-01045-JCH<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT NOVO NORDISK INC.'S MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL AND FOR STAY OF PROCEEDINGS**

Defendant Novo Nordisk Inc. ("Novo Nordisk"), pursuant to 28 U.S.C. § 1292(b) and Rule 5(a)(3) of the Federal Rules of Appellate Procedure ("Fed. R. App. P."), respectfully moves this Court to certify its July 24, 2026 Orders for interlocutory appeal to the Second Circuit because those Orders involve two controlling questions of Connecticut law that will materially advance the ultimate resolution of this case, or, alternatively, to certify one or both questions directly to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b and Connecticut Practice Book § 82-1. Novo Nordisk also respectfully requests a stay of further proceedings pending disposition of this motion and any resulting appeal pursuant to Fed. R. App. P. 8(a)(1).

## I. INTRODUCTION

This is exactly the type of case for which 28 U.S.C. § 1292(b) and Conn. Gen. Stat. § 51-199b, permitting interlocutory appeals of certain decisions, were created. The core controlling legal questions in this case—regarding the scope of Connecticut's Product Liability Act ("CPLA") claims—have not been resolved by the Second Circuit or the Connecticut Supreme Court.

First, Novo Nordisk asks the Court to certify its July 24, 2026 Ruling on Defendant Novo Nordisk's Motion for Summary Judgment (ECF No. 161) on the question of whether Connecticut law permits a separate, independent duty to warn or train nonprescribing nurses after a prescription-drug manufacturer has provided adequate warnings to prescribing physicians. *See* Conn. Gen. Stat. § 52-572q(d) (establishing a product manufacturer's duty to warn the "person best able to take or recommend precautions against the potential harm").

Second, Novo Nordisk asks the Court to certify its July 24, 2026 Ruling on Defendant Novo Nordisk's Second Motion for Summary Judgment (ECF No. 162) on the question of whether, under Conn. Gen. Stat. §§ 52-572m(d) and 52-572q, a CPLA plaintiff seeking damages for amounts allegedly paid to reimburse third parties must produce admissible, nonspeculative evidence that the alleged reimbursements actually occurred to establish recoverable "harm," or whether generalized estimates and testimony that an unspecified amount was paid are sufficient to survive summary judgment. *See* Conn. Gen. Stat. § 52-572m(d) (defining "harm" for purposes of the CPLA while excluding "commercial loss").

Certification is warranted as to both questions because they present threshold legal issues at the foundation of Plaintiffs' claims, the governing Connecticut-law framework leaves substantial room for disagreement, and immediate appellate resolution would materially advance the litigation. This is not a request for ordinary appellate error correction of a summary-judgment

ruling; it concerns whether Connecticut law recognizes the duty and recoverable-harm theories on which this case now turns.

The alternative request for certification to the Connecticut Supreme Court is directed to the same unresolved state-law questions. If this Court concludes that direct certification is the more efficient means of obtaining authoritative guidance on Connecticut law, Novo Nordisk requests that relief; otherwise, the Court should certify the questions under § 1292(b) so that the Second Circuit may decide the appeal or, if appropriate, certify the Connecticut-law issues to the Connecticut Supreme Court.

## II. PROCEDURAL HISTORY

On December 1, 2025, Novo Nordisk filed its Motion for Summary Judgment in accordance with the Court's Scheduling Order.[1] At Plaintiffs' request, the Court then permitted Plaintiffs to disclose an expert out of time.[2] Because the Court's expert discovery, rebuttal deadlines, and dispositive motion deadlines had all passed, the parties filed a Joint Motion to Modify Discovery Schedule in January 2026 to allow for the deposition of Plaintiffs' expert, the submission of responsive expert reports by Novo Nordisk, and a renewed summary judgment motion based on the complete record.[3] The Court initially denied the parties' joint motion, stating that the parties had not sufficiently shown "unforeseen circumstances."[4]

The parties then filed a second Joint Motion to modify the Court's schedule, which included a request that Novo Nordisk's pending Motion for Summary Judgment "be held in abeyance while the Parties complete discovery" and a new deadline be set.[5] The Court granted

[1] ECF No. 113.
[2] ECF No. 119.
[3] ECF No. 122.
[4] ECF No. 123.
[5] ECF No. 128.

the Joint Motion in part. While not accepting the parties' proposed dates, the Court ordered, among other things: "Motion to preclude or summary judgment due by May 18, 2026."[6]

On May 18, 2026, consistent with the Court's revised schedule and as permitted by the Court's January 21, 2026 Order, Novo Nordisk filed its Motion to Preclude and Motion for Summary Judgment.[7] On July 24, 2026, the Court denied Novo Nordisk's original Motion for Summary Judgment, which was rendered moot following the January 21, 2026 Order and never fully-briefed.[8] In a separate ruling dated July 24, 2026, the Court rejected the later filed Motion for Summary Judgment.[9] On July 31, 2026, Novo Nordisk filed a Motion for Reconsideration, which remains pending.[10]

## III. LEGAL STANDARD

A district court may certify a question for interlocutory appeal if (1) it involves a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Where "a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Pen Am. Ctr., Inc. v. Trump*, No. 18-cv-9433-LGS, 2020 WL 5836419, at *3 (S.D.N.Y. Oct. 1, 2020) (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013)). When a district court's order as originally issued does not include this certification, Fed. R. App. P. 5(a)(3) authorizes the court to amend its order to include it in response to a party's motion. Fed. R. App. P. 5(a)(3). Certification remains discretionary and is

[6] ECF No. 129 (emphasis added).
[7] ECF No. 144; ECF No. 145.
[8] ECF No. 161.
[9] ECF No. 162.
[10] ECF No. 166.

reserved for exceptional cases, but this case satisfies that standard because the questions presented can be resolved as legal issues on an established record, do not require reweighing the summary-judgment evidence, and could materially alter or terminate the litigation.

## IV. ARGUMENT

### A. Whether, under Conn. Gen. Stat. § 52-572q(d), Connecticut law permits a prescription-drug manufacturer to owe a separate, independent duty to warn or train nonprescribing hospital nurses after adequate warnings have been provided to prescribing physicians?

#### 1. This Is A Controlling Question of Law

"[A] question of law is controlling if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). A question of law can also be controlling if reversal of the district court's order "could significantly affect the conduct of the action" or if "the certified issue has precedential value for a large number of cases." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).

Here, the question of law is controlling because reversal of the Court's order denying summary judgment could terminate the action. The Court's ruling on *each* individual claim was tied, at least in part, to alleged failures to warn or train product "users" other than prescribing physicians:

- **Design Defect**: "A reasonable jury could find that Griffin was unaware of any risk, and that *Novo Nordisk failed to warn or train users on the dangers of contamination* … Summary Judgment on the design defect claim is therefore denied."[11]

[11] ECF No. 161 at 11-12 (emphasis added)

- **Failure-to-Warn**: "There are material issues of fact as to *what was entailed in the training Novo Nordisk gave, and what warnings were on the pens, what training exactly was provided, and what risks were highlighted*. Therefore, summary judgment as to the failure to warn and failure to train theories is denied."[12]
- **Negligence**: "There are material issues of fact regarding what the [Griffin Hospital nurses'] training involved. For example, Griffin has come forward with *evidence that neither the training materials nor the demonstration pens contained warnings that the pens were for single patient use only or provided information regarding the risk of backflow*. See PAMF at ¶ 4. Therefore, summary judgment as to the negligence basis for the claim is denied."[13]
- **Negligent Misrepresentation**: "Griffin has alleged that Novo Nordisk made negligent and critical omissions about the insulin pens and backflow *through its lack of training and warnings*. *See generally id*. Further, Griffin has come forward in opposition to this Summary Judgment with evidence to support its claim … therefore summary judgment as to the negligent misrepresentation theory is denied."[14]
- **Breach of Implied Warranty of Merchantability**: "Griffin has come forward with evidence that the insulin pens were defective and unreasonably dangerous and that *the warnings on the products were insufficient* … Therefore, summary judgment is denied as to the breach of implied merchantability theory."[15]

[12] *Id.* at 16-17 (emphasis added).
[13] *Id.* at 16-17 (emphasis added).
[14] *Id.* at 18-19 (emphasis added).
[15] *Id.* at 21 (emphasis added).

- **Punitive Damages**: "Griffin has come forward with evidence that Novo Nordisk knew that other hospitals were encountering similar issues with the insulin pens, but *failed to take action to warn or mitigate the damage* … Therefore, summary judgment is denied as to punitive damages."[16]

Accordingly, the Court's denial of summary judgment was materially tied to alleged failures to warn or train Griffin Hospital nurses. If Connecticut law does not permit a separate, independent duty to warn or train nonprescribing nurses after adequate warnings to prescribing physicians, the principal basis for the claims identified above would fall away, potentially entitling Novo Nordisk to summary judgment on those theories. Certification of this question thus could terminate the entire litigation, a factor weighed heavily in favor of interlocutory appeal under 28 U.S.C. § 1292(b). *Kinkead v. Humana, Inc.*, No. 3:15-CV-01637(JAM), 2016 WL 9453808, at *2 (D. Conn. Oct. 13, 2016) ("If the Second Circuit were to reverse my order on interlocutory appeal, the litigation would be terminated... And if the Second Circuit were to uphold my order, the parties would be spared an appeal on this central issue at the conclusion of the district court proceedings.").

Given that an appellate ruling will potentially obviate the need for this entire litigation, certification at this stage is the most efficient way of proceeding. *Gerber Sci. Int'l, Inc. v. Satisloh AG*, No. 3:07CV1382 (PCD), 2009 WL 10689138, at *2 (D. Conn. Sept. 25, 2009), adhered to on reconsideration, 2009 WL 10689139 (D. Conn. Oct. 9, 2009) ("[I]f the Court of Appeals overturns the ruling, the case will be dismissed, saving the parties time and money, and promoting judicial economy."). Interlocutory review is compelling to avoid that risk.

---

[16] *Id.* at 22 (emphasis added).

Moreover, courts also consider whether the certified issue has precedential value beyond the immediate dispute. *Tantaros v. Fox News Network*, *LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020) (granting motion to certify where the state-law question had wide-reaching precedential impact). The question here is likely to recur in prescription-product cases involving institutional administration of drugs or devices because it addresses whether Connecticut manufacturers may owe separate, independent duties to warn or train nonprescribing healthcare personnel after adequate warnings have been provided to prescribing physicians. Further development of the law through an interlocutory appeal could therefore provide meaningful guidance on this recurring determinative legal issue.

**2. <u>Substantial Ground for Difference of Opinion Exists</u>**

"A substantial ground for difference of opinion exists where… the issue is particularly difficult and of first impression for the Second Circuit." *Secs. & Exch. Comm'n v. Rio Tinto PLC*, No. 17-cv-7994, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021); *see also Kinkead*, 2016 WL 9453808, at *3 (certifying interlocutory appeal based on "emerging divergence among district courts, the lack of authoritative guidance from the Second Circuit, and the apparent novelty of the question"). There is substantial ground for a difference of opinion over a novel question of state law here.

Under Connecticut's Product Liability Act ("CPLA"), a product manufacturer has a duty to warn the "person best able to take or recommend precautions against the potential harm." Conn. Gen. Stat. § 52-572q(d). In prescription-drug cases, the Connecticut Supreme Court has applied that language through the learned intermediary doctrine, centering the manufacturer's warning duty on the prescribing physician, who evaluates the risks and decides whether and how the product should be used. *Vitanza v. Upjohn Co.*, 257 Conn. 365, 382 (2001) (holding product

manufacturer was insulated from liability under the learned intermediary doctrine where the prescribing physician was warned but failed to convey such warnings to the patient).

The Second Circuit later applied the same physician-centered framework under the CPLA, holding that a pharmaceutical manufacturer discharged its duty through warnings to physicians despite allegations (1) that the manufacturer's sales representative supplied promotional drug samples to the physician which contained no warnings; (2) that the physician did not provide the package insert containing warnings to the patient; and (3) that the warning never ultimately reached the user of the drug (an otherwise unwarned person in the patient's household). *Vitanza v. Upjohn Co.*, 271 F.3d 89 (2d Cir. 2001) (granting summary judgment).

Here, it is undisputed that Novo Nordisk's insulin pens contained FDA-approved risk information in their packaging and labeling. If, as Novo Nordisk contends, those warnings were adequate and were provided to prescribing physicians, the learned intermediary framework treats the manufacturer's warning duty as discharged. *E.g.*, *O'Neal v. Smithkline Beecham Corp*., 551 F. Supp. 2d 993, 996 (E.D. Cal. 2008) ("Use of the FDA-approved prescribing information is mandatory …."); *Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699, 707 (2d Cir. 2019) ("[D]rug manufacturers are limited in their ability to unilaterally change the labels on their products."); *see also Breen v. Synthes-Stratec, Inc*., 108 Conn. App. 105, 110–12 (2008) ("[A]dequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly." (citation modified)).

Existing Connecticut authority establishes the general physician-centered framework but does not expressly decide whether the statute also permits a separate, independent duty to warn or train nonprescribing nurses in an institutional setting after adequate warnings have been provided to prescribing physicians. The Court's ruling implicates an unresolved application of

§ 52-572q(d), as evidenced by this Court's ruling on Novo Nordisk's Motion for Summary Judgment, which permits claims based on alleged failures to warn or train nurses to proceed notwithstanding the physician-centered framework. *See Gerber*, 2009 WL 10689138, at *1 (certifying interlocutory appeal in the absence of "binding precedent").

There are substantial grounds for a difference of opinion as to whether the Court's extension of § 52-572q(d) permits an additional warning or training duty to nonprescribing nurses in this context, as demonstrated by other courts reaching different conclusions about whether the learned- intermediary doctrine extends to nurses who do not occupy the prescribing role that justifies the doctrine. *E.g.*, *Mazur v. Merck & Co.*, 964 F.2d 1348, 1357 (3d Cir. 1992) (affirming summary judgment for defendant pharmaceutical manufacturer and holding Pennsylvania's learned- intermediary doctrine did not extend to nurses because "nurses generally are not capable of providing the degree of individualized medical judgment rendered by physicians, and are not authorized independently to prescribe drugs"); *see also Cooper Industries, Inc. v. Agway*, 987 F. Supp. 92, 102 (N.D.N.Y. 1997) (finding a "substantial ground for difference of opinion" because the "[t]he Second Circuit has yet to address the issue," and "[d]isagreement is present among the district courts of this Circuit"). If nurses are not learned intermediaries, treating them as separately required warning recipients would be an expansion of, not merely an application of, the physician-centered doctrine. Accordingly, the most prudent course is for the Court to certify this question for appellate guidance.

Furthermore, sound policy reasons support those courts that have rejected extending the learned intermediary doctrine to nurses. The learned-intermediary doctrine channels the warning duty to the prescribing physician, who evaluates risks and determines whether and how the product should be used. Recognizing a separate duty to warn or train nonprescribing nurses after

adequate physician warnings would extend the doctrine beyond its physician-centered framework and create an unbounded question about which institutional personnel—nurses, pharmacists, technicians, educators, procurement personnel, or others—must receive direct warnings or training, and for which products or uses. That expansion would dilute the doctrine's allocation of responsibility and create uncertainty about the class of additional intermediaries to whom a manufacturer would owe duties.

#### 3. <u>An Appeal Will Materially Advance This Litigation to Ultimate Termination</u>

"Courts place particular weight on the last . . . factor[]" which is satisfied "if that appeal promises to advance the time for trial or to shorten the time required for trial." *Florio v. City of New York*, N.Y., No. 06-cv-6473, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008). This prong is "closely connected" to the first factor. *Capitol Records*, LLC, 972 F. Supp. 2d at 551. This factor, too, clearly weighs in favor of certification. As explained in more detail above, should the Second Circuit disagree with this Court's recognition of a separate, independent duty to warn or train nonprescribing nurses after adequate warnings to prescribing physicians, that determination could be dispositive of all claims in this case.

### B. Whether, under Conn. Gen. Stat. §§ 52-572m(d) and 52-572q, a CPLA plaintiff seeking damages for amounts allegedly paid to reimburse third parties must produce admissible, nonspeculative evidence that the alleged reimbursements actually occurred to establish recoverable "harm," or whether generalized estimates and testimony that an unspecified amount was paid are sufficient to survive summary judgment?

#### 1. <u>This Is A Controlling Question of Law</u>

As noted, "a question of law is controlling if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. Damages are an essential element of each of Plaintiffs' claims. Accordingly, and as raised in Novo Nordisk's Second Motion for Summary Judgment, the controlling issue is whether Plaintiffs can establish the CPLA's recoverable

"harm" element when the summary-judgment record contains no admissible, nonspeculative evidence that Plaintiffs actually made the alleged third-party reimbursements. This is a Rule 56 failure-of-proof issue, not a categorical requirement that every CPLA damages claim be supported by a particular document. Where a party bearing the burden of proof fails to make a showing sufficient to establish an essential element, summary judgment is proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 27 (2d Cir. 2008) ("In light of [Plaintiffs'] failure to produce any evidence of damages, summary judgment in favor of [Defendant] was proper."). If Connecticut law requires such proof, Plaintiffs' claims would be subject to dismissal.

**2. <u>Substantial Ground for Difference of Opinion Exists</u>**

As discussed above, "substantial grounds" for difference of opinion exist when a legal issue would present a case of first impression in the Court of Appeals. *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021) ("A substantial ground for a difference of opinion may exist when … [an] issue is particularly difficult and of first impression for the Second Circuit." (citation modified)).

Plaintiffs have not identified admissible, nonspeculative evidence that they actually reimbursed patients or otherwise incurred the reimbursement costs at issue. Plaintiffs have not identified bills, payment confirmations, or other evidence from which a factfinder could objectively determine that the alleged reimbursements occurred and in what amount. Rather, Plaintiffs rely only on (1) the unsubstantiated damages amount provided in their Initial Disclosures (estimated at $2,042,574 prior to discovery)[17] and (2) vague testimony of Griffin Hospital CEO, Patrick Charmel, who, when asked about the amount Plaintiffs paid towards

---

[17] ECF No. 149-23.

patients' treatment, stated: "I don't know specifically. It was more than de minimus, but it was not an exorbitant amount of money."[18] Additionally, the Court previously held that Plaintiffs (because they were barred from seeking commercial loss damages under the CPLA) "may [only] seek damages stemming from the costs it incurred reimbursing patients for injuries allegedly caused by Novo Nordisk's products."[19] They have not identified evidence permitting a reasonable, nonspeculative determination that they incurred those recoverable costs, despite bearing the burden. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

The question of whether the CPLA's recoverable "harm" element can be established without admissible, nonspeculative proof that alleged third-party reimbursements actually occurred is therefore one of first impression and appropriate for certification. It is not a fact-specific dispute about whether a particular document is required; it asks whether generalized estimates and testimony that an unspecified amount was paid are statutorily sufficient under the CPLA and Rule 56. The discovery rules address this distinct issue. Under Fed. R. Civ. P. 26(a)(1)(A)(iii) and 26(e), parties must disclose and supplement damages computations and supporting information, and Rule 37(c)(1) generally precludes use at trial of information not timely disclosed unless the failure was substantially justified or harmless. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–99 (2d Cir. 2006) (applying Rule 37(c)(1) to untimely damages evidence); *Patterson v. Balsamico*, 440 F.3d 104, 117–18 (2d Cir. 2006) (discussing Rule

[18] ECF No. 149-22 at 107.
[19] ECF No. 55 at 5-6.

37(c)(1) preclusion and the factors bearing on whether nondisclosure is harmless). Those rules govern disclosure and whether new or undisclosed damages evidence may be used at trial; they do not supply evidence missing from the summary-judgment record or eliminate the Rule 56 requirement that Plaintiffs make a showing sufficient to establish an essential element. As reasonable minds could reach different conclusions on this statutory question, certification is proper here to clarify the competing statutory interpretations at issue.

### 3. <u>An Appeal Will Materially Advance This Litigation Toward Ultimate Termination</u>

Here, resolution of this statutory sufficiency question could obviate the need for trial entirely. If the Second Circuit holds that the CPLA requires admissible, nonspeculative evidence that alleged reimbursements actually occurred to establish recoverable harm, Plaintiffs' failure to identify such evidence would dispose of the damages theories. *See Florio*, 2008 WL 3068247, at *1. No trial date has been set yet in this case, but the parties face extensive pre-trial deadlines, which could ultimately prove unnecessary if the issue of damages is appealed at this juncture. Permitting an interlocutory appeal will therefore obviate the need for not only the forthcoming trial, but the possible need for a second trial if an appellate court agrees with Defendant on this issue. These factors favor certification. *See id*.

Connecticut law is well settled that damages that are too speculative to calculate cannot sustain a claim. *E.g.*, *Bronson & Townsend Co. v. Battistoni*, 167 Conn. 321, 326–27 (1974) ("The court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount."); *see also CAS Const. Co. v. Town of E. Hartford*, 82 Conn. App. 543, 557 (2004) ("Although the plaintiff did introduce some evidence of its damages, we agree with the court's assessment that such evidence was founded on mere speculation. Speculative evidence is not sufficient evidence

for the trier to make a fair and reasonable estimate of the plaintiff's damages[.] Accordingly, the plaintiff's second claim must fail.”). That principle reinforces the statutory question presented: whether generalized estimates and vague testimony can establish recoverable “harm” under the CPLA when the record contains no admissible, nonspeculative proof that actual third-party reimbursements occurred. The issue is not whether the CPLA imposes a categorical documentary-evidence requirement. Additionally, and as outlined above, damages are an element of each of Plaintiffs’ causes of action under the CPLA. Certification is therefore warranted as resolution of this question could materially advance this litigation to ultimate determination and eliminate the need for trial altogether.

### C. The Court Should Stay This Case Pending Disposition of Novo Nordisk’s Interlocutory Appeal.

This Court has the discretion to stay the proceedings pending decision on this motion and any resulting interlocutory appeal. 28 U.S.C. § 1292(b); Fed. R. App. P. 8(a)(1). A stay pending appeal is warranted where, as here, the (1) “applicant has made a strong showing that [it] is likely to succeed on the merits; (2) . . . applicant will be irreparably injured absent a stay; (3) . . . issuance of the stay will [not] substantially injure the other parties interested in the proceeding; and (4) . . . public interest lies.” *Nken v. Holder*, 556 U.S. 418, 434 (2009). “While stated in these terms, the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal. Thus, if it shows ‘serious questions’ going to the merits of its appeal as well as irreparable harm, the stay may be granted[.]” *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012). All of these factors weigh in favor of a stay.

First, as detailed above, Novo Nordisk has raised "serious questions" regarding interpretation of the CPLA statute, such that the case may be terminated entirely through certification and subsequent interlocutory appeal. This factor weighs in favor of a stay.

Second, Novo Nordisk will suffer substantial prejudice if pre-trial deadlines move forward while the present motion and any subsequent appeal are pending. The issues presented for interlocutory appeal involve controlling legal questions that may dispose of the case or materially reshape the claims to be tried. A stay would avoid duplicative trial preparation, conserve party and judicial resources, and prevent the parties from litigating pretrial issues under a legal framework that may change on appeal. *See Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) (finding irreparable harm and granting stay where continuation of trial with a case-dispositive issue pending on appeal would drain the parties' and court's resources and could render trial "a nullity"). Accordingly, this factor also weighs in favor of a stay.

Third, Plaintiffs will not be harmed by the issuance of a stay. The only prejudice that Plaintiffs may try to point to here is a delay in litigating this action. However, courts have found that a delay in litigation is not itself sufficiently prejudicial to outweigh the benefits of staying the case. *Diatek Licensing LLC v. Estrella Media, Inc.*, No. 22-CV-3508 (LJL), 2022 WL 5108090, at *2 (S.D.N.Y. Oct. 4, 2022) (granting stay where plaintiff did not show prejudice "aside from the prejudice present in every stay that it will be delayed in prosecuting its case.") (citing *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 277 F.R.D. 84, 88 (W.D.N.Y. 2011) (granting stay, noting "delay alone is insufficient to prevent a stay")). Here, any limited prejudice from delay is outweighed by the risk that the parties and the Court will conduct a resource-intensive trial on claims whose legal viability is the subject of the certified appeal.

Finally, a stay will promote judicial efficiency and economy. If granted, a stay may prevent the Court from having to decide numerous pre-trial issues (*e.g.*, motions in limine) that could ultimately become moot. Without a stay, the parties and the court will therefore expend considerable resources on a trial which could ultimately prove unnecessary. Accordingly, for all of the reasons noted, a stay is warranted in this case to conserve the Court's and the parties' resources.

For clarity, Novo Nordisk respectfully requests certification of the following questions: (1) Whether, under Conn. Gen. Stat. § 52-572q(d), Connecticut law permits a prescription-drug manufacturer to owe a separate, independent duty to warn or train nonprescribing hospital nurses after adequate warnings have been provided to prescribing physicians; and (2) Whether, under Conn. Gen. Stat. §§ 52-572m(d) and 52-572q, a CPLA plaintiff seeking damages for amounts allegedly paid to reimburse third parties must produce admissible, nonspeculative evidence that the alleged reimbursements actually occurred to establish recoverable "harm," or whether generalized estimates and testimony that an unspecified amount was paid are sufficient to survive summary judgment.

## V. CONCLUSION

For the foregoing reasons, Novo Nordisk respectfully requests that the Court grant this motion, certify the proposed questions for interlocutory appeal to the Second Circuit or, alternatively, certify the Connecticut-law questions directly to the Connecticut Supreme Court, and enter an order staying this case pending resolution of the certified appeal or certified questions.

Dated: August 25, 2026

Respectfully submitted,

*/s/ Matthew J. Letten*
Matthew J. Letten (ct31121)
DAY PITNEY LLP
225 Asylum Street
Hartford, CT 06103
(860) 275-0565 (telephone)
(860) 331-8931 (facsimile)
mletten@daypitney.com

Christopher G. Campbell, *pro hac vice*
Sarah M. Carrier, *pro hac vice*
DLA PIPER LLP (US)
1201 West Peachtree St. NW
Suite 2800
Atlanta, GA 30309-3450
(404) 736-7800 (telephone)
(404) 682-7800 (facsimile)
christopher.campbell@us.dlapiper.com
sarah.carrier@us.dlapiper.com
Lesley P. Chuang (CT 29468)
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6000 (telephone)
(617) 406-6100 (facsimile)
lesley.chuang@us.dlapiper.com

*Attorneys for Defendant Novo Nordisk Inc.*